LaVerne CHISHOLM, Petitioner,

v.

DEFENSE LOGISTICS AGENCY and Merit Systems Protection Board, Respondents.

No. 80–2501.

United States Court of Appeals, Third Circuit.

Argued April 21, 1981.
Decided July 28, 1981.

James Hunter, III, Circuit Judge, filed a dissenting opinion.

---

Stephen C. Richman, Philadelphia, Pa. (argued), William T. Josem, Markowitz & Richman, Philadelphia, Pa., for petitioner.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief Appellate Section, Gary Tilles, Asst. U. S. Atty., Chief, Civil Div., Joseph M. Masiuk (argued), Asst. U. S. Atty., Philadelphia, Pa., for respondents.

Before HUNTER and SLOVITER, Circuit Judges, and STAPLETON, District Judge.*

OPINION OF THE COURT

SLOVITER, Circuit Judge.

This petition to review the decision of the Merit Systems Protection Board (hereafter Board) challenges the Board's right to use an employee's criminal conviction to collaterally estop him from denying that he committed those acts which led to his removal from government service. Although we conclude that the Board may use the doctrine of collateral estoppel, we find that its use on the present record was inappropriate and therefore remand to the Board for further proceedings.

I.

Petitioner, LaVerne Chisholm, was employed as a warehouse forklift operator for six years with the Defense Logistics Agency, Defense Supply Depot, Mechanicsburg, Pennsylvania (hereafter Agency). The Agency instituted administrative proceedings leading to Chisholm's removal based on charges that on May 16, 1979 he allegedly

---

* Honorable Walter K. Stapleton, United States District Judge for the District of Delaware, sitting by designation.

struck a fellow employee, Ms. Odessa Lewis, and shoved her against some storage bins. The incident arose out of a personal disagreement between the two employees. Chisholm is the father of Lewis' three-year old son. Lewis testified that on the day before the incident she had prevented Chisholm from seeing his son and had refused to talk to him about it.

The Agency asserted that Chisholm's removal, which was a penalty greater than the minimum recommended for a first infraction by the Standard Schedule of Disciplinary Offenses and Penalties, was warranted because "this incident resulted in Mrs. Lewis being referred to the branch clinic for examination where it was determined that Mrs. Lewis would not be able to perform her full range of duties for a period of two days."[1] Chisholm appealed his removal to the Regional Administrator of the Merit Systems Protection Board pursuant to 5 U.S.C. § 7701 (Supp. III 1979).

At a hearing before a presiding official of the Board, the Agency presented three witnesses: Lewis; Donald Brehm, a co-employee who witnessed the incident; and Joseph Headen, a supervisor who saw Lewis shortly after the incident.[2] Lewis testified that she was working in the packing area when Chisholm approached her and said something about not being able to see his baby. Lewis said that she turned away and Chisholm punched her on the shoulder, and as she walked away towards the manager's office Chisholm followed her, punching her in the stomach. Brehm testified that he witnessed the incident but that he could only see the tops of the heads of Chisholm and Lewis because bins approximately five feet high blocked his view. He stated that he saw Lewis holding her stomach and that he saw Chisholm pushing her on the shoulders towards the packing bins. On cross-examination he testified that he did not see Chisholm strike Lewis, although he did see him follow her towards the office. The third witness, Headen, testified that he saw Lewis after the incident and that she was crying and holding her stomach and asking for help.

The Agency introduced a copy of the report of the dispensary where Lewis was treated following the incident. This report listed her complaint as an upset stomach and noted that she was placed on restricted duty for two days. In addition, the Agency introduced the evidence at issue here, two Judgment and Probation Commitment Orders indicating that Chisholm had been found guilty on June 22, 1979 before a Magistrate of the United States District Court for the Middle District of Pennsylvania of the separate offenses of assault and disorderly conduct based on the incident which also led to the removal.

Chisholm, testifying on his own behalf, acknowledged occurrence of the incident but denied any assault. He said that he sought to talk to Lewis and when she walked away from him he reached out to stop her. He stated that he never actually touched her and that he stopped following her when he heard Evelyn Waller, a union steward, yelling out to him to stop. Waller also testified, stating that she had witnessed the entire incident except for approximately three minutes when she was walking around the bins to intercede in the argument. Waller testified that she saw Chisholm following Lewis and reaching out to grab her but that he stopped when Waller yelled and never actually touched Lewis.

In his decision, the presiding official analyzed the evidence and made credibility determinations regarding the witnesses' testimony. He found that Lewis "display[ed]

---

1. The Schedule provides that the penalty for a first infraction of disorderly conduct can range from a reprimand to removal. Second and third offenses of disorderly conduct have a minimum penalty of 10 and 15 days' suspension, respectively. Standard Schedule of Disciplinary Offenses and Penalties for Civilian Employees in the Naval Establishment, Certified Record, Agency Exh. No. 6.

2. The affidavit of a fourth eyewitness was not considered because the presiding official found it was hearsay not subject to cross-examination and not the best evidence in light of the Agency's failure to explain why the witness was not produced in person at the hearing.

hostility" towards Chisholm and also found that her testimony of being punched in the stomach area by Chisholm while he was following her "strains one's credibility." He found some of Brehm's testimony to be contradictory, and thought that petitioner's witness, Waller, "gave more reliable testimony on this matter." The presiding official also concluded that the Agency medical report did not corroborate the extent of injuries claimed by Lewis, noting there was no evidence in the report of bruises, broken ribs or stomach injury resulting from a blow. Accordingly, the presiding official reversed the agency action because he found it was not supported by a preponderance of the credible evidence. The presiding official's opinion did not mention the prior criminal convictions based on the same incident.

The Board on its own motion reopened the appeal in order to address what it termed the significant issue of first impression before it of whether an employee's prior criminal conviction may effect a collateral estoppel to preclude the employee from denying an agency's charge relating to the same incident of misconduct.[3] After receiving briefs from the Agency and an intervenor, the Office of Personnel Management,[4] in support of the use of collateral estoppel and from petitioner in opposition, the Board concluded that collateral estoppel was appropriate in proceedings before an administrative agency and that the instant situation warranted its use. The Board found that the failure of the presiding official to consider the collateral estoppel issue contravened Board regulations[5] and further that his failure to accord full estoppel effect to the convictions was in error. The Board then concluded that "[u]pon full review of the record on appeal . . . the agency's charge that the [petitioner] shoved and

struck another employee, while both were on duty, is supported by the preponderance of the evidence." It further concluded, without discussion, that the Agency's removal of petitioner "promotes the efficiency of the service under the circumstances of this case."[6]

On appeal petitioner raises three arguments: first, that collateral estoppel is not an appropriate doctrine for use in administrative disciplinary proceedings; second, that the Judgment and Probation Commitment Orders on which the Board relied without examination of the pleadings, transcript or record of the criminal proceeding could support the use of collateral estoppel to demonstrate only that petitioner had committed the least serious conduct which would violate the statute, i. e., "the least touching of another person's body wilfully;" and third, that reliance on the Judgment and Probation Commitment Orders does not support a reversal of the presiding official's factual finding that the Agency had not proven that petitioner's misconduct resulted in Lewis' inability to perform her full range of duties for two days.

The Agency contends that the principles underlying the use of collateral estoppel in the courts are applicable to quasi-judicial bodies within administrative agencies and that the use of collateral estoppel in this case met the requirements for its use which this court has established. In response to petitioner's contention that there was no evidence to support a reversal of the presiding official on the question of injury, the Agency contends that the dispensary report constitutes undisputed evidence of injury.

## II.

The use of a prior criminal conviction as collateral estoppel in administrative pro-

3. Authority for the Board to reopen on its own motion is found in 5 C.F.R. § 1201.117, (1980).

4. The office is permitted to intervene as a matter of right pursuant to 5 U.S.C. § 7701(d)(1) (Supp. III 1979); 5 C.F.R. § 1201.34(b)(1) (1980).

5. The Board cited 5 C.F.R. 1201.111(b)(1) (1980) which provides that the initial decision of the presiding official shall contain "[f]ind-

ings of fact and conclusions, as well as the reasons or bases therefore, upon all the material issues of fact and law presented on the record."

6. The Agency is permitted to take action against an employee "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a) (Supp. III 1979).

ceedings has apparently not been directly adjudicated.[7] Nevertheless the same policy reasons which underlie use of collateral estoppel in judicial proceedings are equally applicable when the administrative board acts as an adjudicatory body. It is well established that the doctrine of collateral estoppel contributes to efficient judicial administration, serving the public interest in judicial economy as well as the parties' interests in finality, certainty of affairs and avoidance of unnecessary relitigation. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328–30, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971); F. James & G. Hazard, *Civil Procedure*, § 11.2 (2d ed. 1977); Semmel, *Collateral Estoppel, Mutuality and Joinder of Parties*, 68 Colum.L.Rev. 1457, 1457 n.2 (1968). We see no obstacle to the Board's use of the judicially developed doctrine of collateral estoppel in an appropriate case unless the legislative scheme indicates otherwise.

█ Here, Congress established the Board as "a quasi-judicial body, empowered to determine when abuses or violations of law have occurred, and to order corrective action," S.Rep.No.969, 95th Cong., 2d Sess. 24 (1978), U.S.Code Cong. & Admin.News 1978, pp. 2723, 2746. The Board's hearing officers, termed "presiding officials", must make findings of fact and conclusions of law, 5 C.F.R. § 1201.111 (1980). Where the agency's adverse action against an employee is based on alleged misconduct, the presiding official must determine whether the employee's alleged misconduct did in fact occur, *see Phillips v. Bergland*, 586 F.2d 1007, 1010–11 (4th Cir. 1978), and the Board

in affirming must conclude that this finding is supported by a preponderance of the evidence. 5 U.S.C. § 7701(c)(1)(B) (Supp. III 1979). A prior criminal conviction based on the same misconduct is ordinarily premised on the occurrence of the misconduct. There is therefore no logical reason why the prior conviction should not be given collateral estoppel effect to establish this relevant predicate fact.

Petitioner relies on decisions by labor arbitrators declining to accord preclusive effect to prior court judgments to support his argument that collateral estoppel is inappropriate in agency proceedings. Specifically, he refers us to the following quote from *In re Chrysler Corp.*, 53 Lab.Arb.Rep. 1279, 1282 (1969):

[I]t is well established that in the absence of a contrary stipulation by the parties, determinations by other tribunals of issues arising on the same facts are not binding on arbitrators. Thus a ruling by a Workman's Compensation Board as to disability, or by an Unemployment Compensation Board as to eligibility for benefits, or by courts of law as to criminal or civil responsibility, do not by themselves foreclose an arbitrator from proceeding to judgment on issues submitted to him on the basis of the evidence and arguments presented to him. I do not know what evidence and or argument was presented at the Recorders Court trial. I do not know what rules of law the Court applied. I do not know what elements of the evidence submitted to it persuaded the jury to come to its conclusion. My responsibility is to formulate my own

7. Several courts have referred to the question of the weight to be accorded prior criminal judgments in the context of agency proceedings without deciding the issue. In *Kowal v. United States*, 412 F.2d 867, 188 Ct.Cl. 631 (1969), the court held the Civil Service Commission's Board of Appeals and Review erred in favoring witnesses' affidavits over their later trial testimony. The court noted that the trial testimony must have been believed by the jury to have led to a judgment of acquittal and that this reflected favorably upon the reliability and credibility of the trial version. Under these circumstances "the Board could not rationally choose

to believe the affidavits over the oral testimony...." *Id.* at 872. In *Cuevas-Cuevas v. Immigration and Naturalization Service*, 523 F.2d 883 (9th Cir. 1975) (per curiam), the court referred with apparent approval to the Immigration and Naturalization Service's reliance on petitioner's plea of guilty to a charge of knowingly and willfully aiding and abetting aliens to enter the United States unlawfully. The court stated that the guilty plea established only the aiding and abetting but did not establish that these actions were "for gain" as required under the relevant deportation statute. *Id.* at 884.

judgment based on the result recited be-low.[8]

It is questionable whether the *Chrysler* approach represents the uniform position taken in all labor arbitration cases.[9] In any event, the difference in function and responsibility of labor arbitrators and administrative boards makes the petitioner's analogy inapposite. As the Supreme Court noted in *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960), arbitrators are part of a system of self-government created by contract between private parties and are not public tribunals imposed upon the parties by external authorities. A labor arbitrator generally decides the particular dispute on an *ad hoc* basis. In furtherance of the statutorily mandated deference to and encouragement of such private settlement, a court generally will not intrude itself into an arbitrator's evaluation of facts and law. It will act only to guarantee that the arbitrator adheres to the terms of the parties' agreement and to ensure the minimally accepted level of rationality. *See International Brotherhood of Teamsters, Local 249 v. Western Pennsylvania Motor Carriers Association*, 574 F.2d 783 (3d Cir.), *cert. denied*, 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 122 (1978).

 In contrast, when an administrative agency acts as a quasi-judicial body, it fulfills the same function as a court, seeking to make a determination which is consistent with the public interest as reflected in the governing statute. Such agencies are subject to the requirement that they not act arbitrarily or capriciously, *see* 5 U.S.C. § 706(2)(A) (1976), and have an obligation to render consistent opinions and to either follow, distinguish or overrule their own precedent. *See, e. g., Secretary of Agriculture v. United States*, 347 U.S. 645, 652–54, 74 S.Ct. 826, 830–32, 98 L.Ed. 1015 (1954); *Food Marketing Institute v. ICC*, 587 F.2d 1285, 1290 (D.C.Cir.1978); *Ohio Fast Freight, Inc. v. United States*, 574 F.2d 316, 319 (6th Cir. 1978). Therefore, even if a labor arbitrator may properly disregard fact determinations made in other litigated proceedings, an issue we do not decide, a quasi-judicial administrative body is not necessarily similarly situated. We believe the better rule is to permit the administrative agency to secure the same benefits from the doctrine of collateral estoppel as the courts find. Thus we agree with the holding of the Merit Systems Protection Board that it is entitled to employ the doctrine of collateral estoppel.

### III.

 The doctrine of collateral estoppel can only preclude relitigation of those issues actually litigated and decided in an earlier

---

**8.** It appears from the quoted language in *Chrysler* that the arbitrator's reluctance to give preclusive effect to a court judgment stemmed primarily from his lack of information about the court proceeding. Furthermore in *Chrysler Corp.*, the prior judgment sought to be used was an acquittal of criminal charges. *See generally* In re New York State Dep't of Correctional Serv., 69 Lab.Arb.Rep. 344, 349 (1977) (consensus of arbitral awards in labor disciplinary cases is that neither criminal convictions nor acquittals are *per se* binding on arbitrators because issues and standard of proof are invariably different).

In contrast to the labor arbitration situation, the Department of the Treasury has codified the collateral estoppel doctrine in a regulation, which provides that a conviction of an attorney under the revenue laws of the United States or of any offense involving breach of trust or

dishonesty satisfies the statutory standard of disreputable conduct for which the attorney may be disbarred or suspended from practice before the Internal Revenue Service, 31 C.F.R. § 10.51(a) (1980). Courts have upheld disbarments based solely on the government's proof of such convictions without permitting the convicted attorney to challenge the validity of the conviction. *Silverton v. Department of Treasury*, 644 F.2d 1341, 1347 (9th Cir. 1981); *Washburn v. Shapiro*, 409 F.Supp. 3, 11 (S.D. Fla.1976).

**9.** There are other arbitration cases in which a prior criminal conviction was accorded preclusive effect on the issue of the occurrence of the alleged misconduct involved in the labor dispute. *See, e. g., In re Department of the Air Force*, 74 Lab.Arb.Rep. 949 (1980); *In re American Airlines, Inc.*, 68 Lab.Arb.Rep. 1245, 1247 (1977).

proceeding.[10] A determination of which issues were litigated may not be immediately discernible when the antecedent criminal suit resulted in a general verdict of the jury or judgment of the court without special findings. *See Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951). Accordingly, the Supreme Court has held that when a prior criminal judgment is sought to be used as an estoppel, the court must examine the record of the criminal proceeding, including the pleadings, evidence, jury instructions and other relevant matters in order to determine specifically what issues were decided. *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970) (collateral estoppel use of general verdict);[11] *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. at 569, 71 S.Ct. at 414 (collateral estoppel use of verdict of guilty).[12]

This court has also cautioned that inquiry beyond the mere fact of conviction may be necessary before collateral estoppel can be applied. In *Basista v. Weir*, 340 F.2d 74 (3d Cir. 1965), a plaintiff who brought a civil rights suit against police officers alleging unlawful arrest had been convicted of assault and battery on the police officers who arrested him. Nonetheless we held that the officers could not use plaintiff's conviction as conclusive evidence of the lawfulness of the arrest because the transcript of the criminal trial had not been introduced into evidence, and it was therefore unclear whether the issue of the lawfulness of the arrest had been decided. *Id.* at 81–82. *Accord, Williams v. Liberty*, 461 F.2d 325, 327 (7th Cir. 1972). Similarly, in *Kauffman v. Moss*, 420 F.2d 1270 (3d Cir.), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970), we held that because the district court had not examined the record from plaintiff's criminal trial, it was error for the court to rely on plaintiff's prior criminal conviction to estop him from proving that police officers had conspired to secure his conviction by the knowing use of perjured testimony. *Id.* at 1274–75.[13]

---

**10.** In this respect it differs from res judicata which bars litigation of claims which *could* have been raised in an earlier action. *See Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195 (1877). *See also* 1B Moore's Federal Practice ¶ 0.441[1] (2d ed. 1980).

**11.** In *Ashe*, the Court incorporated collateral estoppel into the constitutional protection against double jeopardy. The court in which a criminal defendant is seeking to use a judgment of acquittal must "conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." 397 U.S. at 444, 90 S.Ct. at 1194. On the other hand, collateral estoppel use of a criminal acquittal is invariably foreclosed in a subsequent civil suit because of the differing standards of proof. Thus a determination that the government did not prove its case beyond a reasonable doubt will not preclude either the government or a private party from attempting to prove the same set of facts by a preponderance of the evidence. *See United States v. National Ass'n of Real Estate Bds.*, 339 U.S. 485, 70 S.Ct. 711, 94 L.Ed. 1007 (1950); *Helvering v. Mitchell*, 303 U.S. 391, 397–98, 58 S.Ct. 630, 632, 82 L.Ed. 917 (1938); 1B Moore's Federal Practice ¶ 0.418[1], at 2703–4 (2d ed. 1980). Acquittal of criminal charges is not binding in agency proceedings seeking to remove the employee

from service. *Alsbury v. United States Postal Serv.*, 530 F.2d 852 (9th Cir.), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); *Polcover v. Secretary of Treasury*, 477 F.2d 1223 (D.C.Cir.), *cert. denied*, 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973).

**12.** In *Emich Motors* the Court construed section 5 of the Clayton Act, 15 U.S.C. § 16(a) (1976), which provides that a final judgment in favor of the government in an antitrust action shall be prima facie evidence against the defendant in a subsequent civil suit by any person, as enabling a private plaintiff to use the criminal conviction as extensively as the government would be able to under the doctrine of collateral estoppel. 340 U.S. at 568–69, 71 S.Ct. at 413–14. The evidentiary use of the conviction under this section was therefore to be governed by reference to general principles of estoppel. *Id.*

**13.** In *Silverton v. Department of Treasury*, 644 F.2d 1341, 1347 (9th Cir. 1981), the court noted that the district court which had affirmed the Treasury Department's disbarment of an attorney from practice before the Internal Revenue Service based on felony convictions had before it various court decisions upholding plaintiff's convictions, the transcript of the state's evidentiary hearing on plaintiff's petition for a writ of habeas corpus, and the transcript of both the

In the case before us, the Board accorded conclusive weight to petitioner's criminal convictions based solely on the Judgment and Probation Commitment Orders. The Board could properly rely on the convictions only if the issue on which the Board sought to estop the petitioner was necessarily decided by those convictions. *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. at 569, 71 S.Ct. at 414.

Petitioner was convicted of two charges. One conviction was under 18 U.S.C. § 13 (1976) and related to disorderly conduct under state law. It was not relied on by the Board to establish the facts to uphold petitioner's removal. The other conviction, which was the one relied on by the Board, was for violation of 18 U.S.C. § 113(d) (1976), which prohibits assault by "striking, beating, or wounding." The Board concluded that a conviction under section 113(d) provides that the defendant "must have made actual body contact with the assault victim, involving striking, beating, or wounding," citing *United States v. Stewart*, 568 F.2d 501, 504–505 (6th Cir. 1978). It found that "the elements of the criminal charge of assault by striking, beating, or wounding are substantially identical to the agency's charge of shoving and striking, where the same incident was involved," and therefore concluded that the presiding official's failure to accord collateral estoppel effect to the criminal conviction was erroneous.

Petitioner contends that because section 113(d) has been interpreted to be the "equivalent of simple battery" notwithstanding its use of the words "striking, beating or wounding," *United States v. Knife*, 592 F.2d 472, 482 (8th Cir. 1979), it cannot be conclusively presumed from the Judgment and Probation Commitment Orders that his conviction established more than "the least touching." To support his position he notes that the case relied on by the Board for its construction of the statute also equated section 113(d) with simple battery and proceeded to quote with apparent approval Blackstone's definition of battery as " 'The least touching of another's person wilfully, or in anger . . . . ' " *United States v. Stewart*, 568 F.2d at 504–05, *quoting* 3 W. Blackstone, *Commentaries on the Laws of England* 120 (E. Christian ed. 1822).[14]

Petitioner's argument may reflect too narrow a view of the conduct for which he was convicted. If Lewis' testimony before the magistrate was substantially the same as the testimony she gave before the presiding official and there was no other testimony from which the magistrate could have concluded that "mere touching" occurred, then it would be a reasonable conclusion that the magistrate's judgment of conviction was based on his acceptance of Lewis' version of the incident. The Board would then have had sufficient basis to use the conviction to establish that petitioner struck Lewis and pushed her against some storage bins.[15] However, although Lewis stated before the presiding official that she had previously testified at the criminal proceeding, she was never asked the substance of her testimony. We are therefore uninformed of what acts furnished the foundation of the conviction on the charge of assault.

preliminary and final hearings before the California State Bar which had disbarred plaintiff on the basis of the convictions.

**14.** The holding of *Stewart* was that there is no constitutional right to a jury trial in a prosecution under section 113(d) because it is a petty offense within the meaning of *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The court elaborated on the nature of a section 113(d) offense, noting that it "encompasses the kind of conduct which is common enough in daily life, although universally disapproved. Society's knowledge of a person's conviction of simple assault and battery carries with it perhaps the inference that the defendant was quarrelsome or ill-tempered, but without more does not usually attribute to him any more serious or lasting opprobrium." 568 F.2d at 505.

**15.** We intimate no view as to whether the Agency *could* have decided to dismiss petitioner based simply on a criminal conviction for assault of a co-employee at work except to note that this was not the basis on which the Agency *in fact* acted in this case. *See SEC v. Chenery Corp.*, 318 U.S. 80, 95, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943) (agency action will only be upheld on basis articulated by agency).

*Basista v. Weir*, 340 F.2d at 81–82. Missing from the record before the Board were the pleadings, transcript, if any, and exhibits, which the Supreme Court considered relevant in both *Ashe* and *Emich Motors*. The Commitment Orders indicate only that petitioner pleaded not guilty but that he was subsequently found guilty by a United States Magistrate and fined $50.00 on the assault and $25.00 on the disorderly conduct charge. At oral argument before us, neither counsel was able to provide further information. We have previously held that reasonable doubt as to which issues were decided by a prior judgment should be resolved against using such judgment as an estoppel. *Kauffman v. Moss*, 420 F.2d at 1274. Therefore, unless the only evidence on which the magistrate could have relied to convict was evidence of striking and shoving, the application of estoppel in this case cannot be upheld.

 Since it is clear that the Board's reversal of the presiding official's determination was based solely on the application of collateral estoppel, we believe it appropriate to remand this matter to the Board so that it can ascertain whether the precise issue on which it seeks to estop petitioner was in fact litigated and necessarily decided adversely to him. *See Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, (3d Cir. 1974); *United States v. Friedland*, 391 F.2d 378, 382 (2d Cir. 1968), *cert. denied*, 404 U.S. 914, 92 S.Ct. 239, 30 L.Ed.2d 188 (1971). The Agency, as the party seeking to effectuate an estoppel, has the burden of demonstrating the propriety of its application. *Id.* It may meet the burden of establishing which issues were litigated by introduction of the record of the criminal proceeding, including the transcript, or magistrate's opinion, if any. If that is not feasible, the Agency should be permitted to bring in extrinsic evidence so that a sufficient and adequate record of the proceeding may be developed. *Basista v. Weir*, 340 F.2d at 82. This could include, for example, testimony about the earlier case by the magistrate, the court reporter, or witnesses. *See Popp v. Eberlein*, 409 F.2d 309, 310 (7th Cir.), *cert. denied*, 396 U.S. 909, 90 S.Ct. 222, 24

L.Ed.2d 185 (1969); F. James & G. Hazard, *Civil Procedure* § 11.17, at 567 (2d ed. 1977). Thus, we conclude that while the Board is entitled to rely on the doctrine of collateral estoppel, its use of that doctrine must follow procedures similar to those established for its use in judicial proceedings.

### IV.

There is yet another reason why this case should be remanded. The Agency explicitly stated that it was imposing a greater penalty than the minimum recommended by its own guidelines for a first offense of this nature because "this incident resulted in Mrs. Lewis being referred to the Branch Clinic for examination wherein it was determined that Mrs. Lewis would not be able to perform her full range of duties for a period of two days." The presiding official, however, specifically found that the clinic report listed Lewis as having complained of an "upset stomach" with "no evidence . . . of bruises, broken ribs, or stomach injury resulting from a blow. . . . In addition, the medical report mentions nothing about injury to Ms. Lewis' shoulder from the first blow allegedly struck by [petitioner]." There was no other evidence corroborating Lewis' allegations regarding the extent of her injuries and the presiding official concluded that "the agency medical report does not corroborate the extent of injuries claimed by Ms. Lewis."

This finding was not directly addressed by the Board. Its conclusion "that the agency's dismissal of [petitioner] based on that charge promotes the efficiency of the service in the circumstances of this case" was made without any discussion of the extent of Lewis' injuries. There is simply nothing in the Board's opinion indicating if or why this finding by the presiding official was implicitly reversed. The collateral estoppel effect of the prior judgment of conviction, which was the basis of the Board's reversal on the occurrence of the incident, could not support this *sub silentio* reversal of the presiding official since section 113(d) does not require any "particular degree of

severity in the injury." *See United States v. Knife*, 592 F.2d at 482.

Accordingly, we are faced with an Agency action justifying the maximum sanction of removal of an employee because of the severity of the victim's injuries, a reversal by the presiding official who examined the evidence and found it did not support in any way the Agency conclusion with respect to the injuries, and a reinstatement of the removal sanction by the Board without any discussion of any evidence in the record with regard to the severity of the victim's injuries.[16] Our independent examination of the medical report, which was the sole basis on which the Agency relied on the issue, also failed to disclose any support for the Agency's apparent view that the injuries were so severe as to justify removal for a first offense. In this connection we note that Lewis was not disabled from work, but was only restricted to lifting no more than 20 pounds for two days.

■ We find therefore that on this record the Board's action is not supported by substantial evidence. We will remand this matter to the Board so that it may determine the extent to which the prior judgments of conviction can collaterally estop petitioner in this case and so that it may give further consideration to the Agency's choice of the penalty of removal in light of the record before it.

---

**16.** Even under the dissent's position that "the section 113(d) conviction necessarily included a finding of bodily injury *or* an offensive touching" (emphasis added), the record affords no basis for assuming that "bodily injury" as distinct from "offensive touching" was necessarily included in the conviction. Thus, the bare conviction does not itself establish the bodily injury on which the agency based its imposition of the severe sanction of removal.

The presiding official appears to have addressed the alleged severity of the injuries rather than the issue of causation. It may be that the Board determined that the significant issue was whether Chisholm's actions caused Lewis' restricted duty, that the proximity of the incident to the injury satisfactorily proved that issue, and that was sufficient to warrant removal. However, it failed to discuss this issue, giving us no basis on which to uphold its determination, particularly since the conviction alone is silent on this issue.

**JAMES HUNTER, III, Circuit Judge, dissenting:**

I respectfully dissent.

I agree that the general principles of collateral estoppel may be applied to administrative proceedings, as the majority outlines in section II, but I do not believe this case should be remanded to the Merit Systems Protection Board for further inquiry. Appellant's conviction under 18 U.S.C. § 113(d) (1976) necessarily decided the precise issue before the Board and hence his dismissal should be affirmed.

In remanding the case for further scrutiny of the record supporting appellant's prior conviction, the majority states: "When a prior criminal judgment is sought to be used as an estoppel, the court must examine the record of the criminal proceeding, including the pleadings, evidence, jury instructions and other relevant matters in order to determine specifically what issues were decided. *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1950)." At 47–48. While both *Ashe* and *Emich* addressed the estoppel effect of a prior criminal judgment, only *Emich* involved a prior conviction, the situation presented by this case.[1]

*Emich* concerned the use of a prior criminal conviction of the antitrust laws to

---

The dissent also stresses that the conviction was under section 113(d), which is more severe than the simple assault offense covered by section 113(e). Again, without more amplification of the criminal record, we cannot evaluate the significance of that factor to the use of the conviction in the present proceedings. We note, however, that the record does show that the penalty imposed on Chisholm by the magistrate consisted of the mild fine of $50.00 on the section 113(d) conviction and $25.00 on the disorderly conduct conviction.

**1.** *Ashe v. Swenson* concerned the estoppel effect of a prior acquittal. Unlike a criminal conviction, where the reviewing court knows that the necessary elements of the crime have occurred, a judgment of acquittal could be based on a myriad of factors. Hence, close scrutiny of the record underlying an acquittal is required because the court must conclude "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consider-

establish a prima facie case in a subsequent civil suit against the identical defendant. The court held that the estoppel effect of the prior convictions "extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution" and that "[i]n the case of a conviction based on a jury verdict of guilty, issues which were essential to the verdict of guilty must be regarded as having been determined by the judgment." *Emich*, 340 U.S. at 569, 71 S.Ct. at 414.

The Court went on to recognize that simply looking at the judgment of conviction may not reveal what issues were necessarily decided in the earlier proceeding. The jury's general verdict might not identify what means charged in the indictment were used in effectuating the conspiracy. Hence, in that case, it was important to look behind the guilty verdict—to the record, pleadings, and jury instructions—in order to identify precisely what issues were

ation." *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194 (*quoting* Mayers and Yarbrough, Bio Vexari: *New Trials and Successive Prosecutions,* 74 Harv.L.Rev. 1, 38–39 (1960)).

2. As the *Emich* court stated:

A general verdict of the jury or judgment of the court without special findings does not indicate which of the means charged in the indictment were found to have been used in the conspiracy. And since all of the acts charged in the indictment need not be proved for conviction ..., such a verdict does not establish that defendants used all of the means charged or any particular one. *Under these circumstances* what was decided by the criminal judgment must be determined by the trial judge hearing the treble damage suit, upon an examination of the record, including the pleadings, the evidence submitted, the instructions under which the jury arrived at its verdict, and any opinions of the court. 340 U.S. at 569, 71 S.Ct. at 414 (emphasis added).
This passage reveals that the underlying concern is to determine precisely what issues were presented before and determined by the prior conviction. If, as was the case in *Emich*, the indictment contained several disparate allegations, a reviewing court would need to scrutinize the record of the prior proceeding to determine what was placed in issue. In our case, however, such an inquiry is superfluous. A necessary condition of the criminal conviction—bodily harm or offensive touching—is the precise issue before the Merit Systems Protection Board.

decided.[2] *Id.,* at 569, 71 S.Ct. at 414. The court undertakes such an in depth examination solely to determine what was put in issue and determined by the prior conviction.[3]

Such an inquiry is not required in this case. The precise issue before the Board— did the appellant strike and shove the victim—was necessarily decided by the section 113(d) conviction. Section 113(d) states:

Whoever, within the special maritime and territorial jurisdiction of the United States is guilty of assault shall be punished as follows ...

\*　　\*　　\*　　\*　　\*　　\*

(d) Assault by striking, beating or wounding by fine of not more than $500 or imprisonment for not more than six months or both.

18 U.S.C. § 113(d) (1976).

Although this statute has been referred to as a petty offense, *United States v. John-*

3. The majority also relies on *Basista v. Weir,* 340 F.2d 74 (3d Cir. 1965) and *Kauffman v. Moss,* 420 F.2d 1270 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970) for the proposition that a mere judgment may not support the use of collateral estoppel in a subsequent suit. While both *Basista* and *Kauffman* certainly identify the importance of looking beyond a mere conviction, they stress that the inquiry is required in order to determine exactly what questions were placed in issue and ultimately decided by the prior court. In the instant case, this question is answered by an examination of 18 U.S.C. § 113(d), the underlying statute.

In *Basista,* the court refused to give estoppel effect to a prior assault and battery conviction in a subsequent civil rights suit, because there was some doubt as to the basis for the underlying conviction. As the *Basista* court stated: "There is no doubt, however, that, at best, the present Quarter Sessions judgment against Basista is ambiguous and therefore must be treated as insufficient to support collateral estoppel." 340 F.2d at 82. In contrast, the appellant's conviction for assault by striking, beating, or wounding, clearly precludes the issue in question. It arises from the identical incident at issue before the Board.

In *Kauffman* the court refused to give estoppel effect to a prior state court conviction when the subsequent case included an allegation the police officers involved in the first suit had conspired illegally. Such a claim of intrinsic prejudice necessarily involves the veracity of the first proceeding and prevents it from acting as an estoppel. 420 F.2d at 1274–75.

*son,* 637 F.2d 1224, 1242 n.26 (9th Cir. 1980), it is clear that conviction under section 113(d) requires some form of physical contact. *United States v. Iron Shell,* 633 F.2d 77, 88 (8th Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). The statutory language would seem to require actual striking, beating or wounding, yet several courts have interpreted these words as tantamount to simple battery at common law. *Johnson,* 637 F.2d at 1242 n.26; *Iron Shell,* 633 F.2d at 88; *United States v. Stewart,* 568 F.2d 501, 504–05 (6th Cir. 1978). But even under common law battery, a finding of bodily injury or offensive touching is required. W. Lafave & A. Scott, *Handbook on Criminal Law* § 81 at 604 (1972). In addition, it is important to note that appellant was convicted of § 113(d), assault by striking, beating or wounding, rather than § 113(e), simple assault. The increased severity of § 113(d) further supports the Board's dismissal. If the appellant had simply assaulted the victim, without bodily injury, he would have been convicted of simple assault, § 113(e), not assault by striking, beating or wounding, § 113(d). Therefore, the section 113(d) conviction necessarily included a finding of bodily injury or an offensive touching.

This finding supports the Board's action. The appellant was dismissed for striking and shoving the victim in violation of the Standard Schedule of Disciplinary Offenses and Penalties for Civilian employees which proscribes: "disorderly conduct; fighting; threatening or attempting to inflict bodily injury to another; engaging in dangerous horseplay or resisting competent authority." Joint Appendix at 20, (Opinion of the Merit Systems Protection Board at 2 n.1). A remand to determine what issues were actually adjudicated in the criminal conviction is not required. The statutory language is clear on its face, and even if construed as simple battery, a conviction necessarily includes a finding of bodily injury or offensive touching. Therefore, the Board's opinion is supported by substantial evidence and appellant's dismissal should be affirmed.