**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2019
_____

UNITED STATES OF AMERICA ex rel.
JANE DOE

v.

HEART SOLUTION, PC; BIOSOUND MEDICAL
SERVICES; KIRTISH N. PATEL; NIMESH PATEL;
NITA K. PATEL

Heart Solution PC
and Nita K. Patel,

Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-14-cv-03644)
District Judge: Honorable Stanley R. Chesler
_____

Argued on October 1, 2018

Before: JORDAN, ROTH, <u>Circuit Judges</u> and STEARNS[*], <u>District Judge</u>

(Opinion filed May 3, 2019)

Mark E. Cedrone                (**ARGUED**)
Cedrone & Mancano
123 South Broad Street - Suite 810
Philadelphia, PA 19109

       Counsel for Appellants


Charles Graybow                (**ARGUED**)
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

       Counsel for Appellee USA


Paul B. Brickfield
Brickfield & Donahue
70 Grand Avenue
Suite 102
River Edge, NJ 07661

---

[*] The Honorable Richard G. Stearns, United States District Judge for the District of Massachusetts, sitting by designation.

Timothy J. McInnis
521 Fifth Avenue
Suite 1700
New York, NY 10175

Counsel for Appellee Jane Doe

_____

OPINION

_____

ROTH, <u>Circuit Judge</u>

Nita K. Patel and her husband, Kirtish N. Patel, were convicted of defrauding Medicare in a prior criminal proceeding. The United States then brought this civil action for the same fraudulent schemes against Ms. Patel, Ms. Patel's healthcare company (Heart Solution P.C.), Mr. Patel, and Mr. Patel's healthcare company (Biosound Medical Services). The United States prevailed in the District Court and only Ms. Patel and Heart Solution appealed.

In granting summary judgment to the United States, the District Court relied on the Patels' convictions and plea colloquies in the criminal case, essentially concluding that Ms. Patel had already admitted to all elements and issues relevant to her civil liability. However, the District Court failed to dissect the issues that were determined in the criminal case from those that were not. It lumped together Ms. Patel and Heart Solution, even though Heart Solution was

3

not involved in the criminal case. It also failed to disaggregate claims Medicare paid to Ms. Patel and Heart Solution from those paid to Mr. Patel and Biosound. As such, it erred in finding that Ms. Patel and Heart Solution conceded all of the essential elements to every claim in this appeal. Thus, we will affirm the judgment of the District Court in part and vacate in part and remand for further proceedings consistent with this opinion.

## I.

In November 2015, the Patels pled guilty to separate, but nearly identical, criminal information charges under 18 U.S.C. § 1347 for defrauding Medicare.[1] They conducted this fraud through two separate schemes. First, the Patels submitted diagnostic reports to Medicare that should have been written by a specialist physician—but were not—and contained forged physician signatures. Ms. Patel and Heart Solution do not dispute liability with respect to the claims involving this scheme. The second scheme involved diagnostic neurological testing. Medicare regulations require all diagnostic testing to be "reasonable and necessary," as defined under Medicare Part B.[2] In order for diagnostic neurological testing to be "reasonable and necessary," it must be performed under the proper level of physician supervision.[3] The Patels did not comply with these regulations. Instead of employing a supervising neurologist for these tests, the Patels falsely represented to Medicare that

---

[1] Ms. Patel was sentenced to 78 months in prison and is currently serving her sentence.

[2] 42 U.S.C. § 1395y(a)(1)(A).

[3] 42 C.F.R. § 410.32(b)(1); 42 C.F.R. § 411.15(k).

the neurological testing was being supervised by a licensed neurologist.

Much of this appeal centers on Ms. Patel's plea colloquy for her criminal conviction. The relevant parts of the colloquy follow. First, the sentencing judge asked Ms. Patel whether she and her husband "own and operate mobile diagnostic companies known as Biosound Medical Services and Heart Solution PC," and she responded, "yes."[4] Neither the court, the government, nor Ms. Patel clarified whether she had ownership interests in both companies or just Heart Solution.[5] Next, the judge asked whether between 2006 and 2014, Ms. Patel and her husband "falsely represent[ed] to Medicare that the neurological testing being performed at Biosound Medical Services was being supervised by a licensed neurologist, when, in fact, it was not."[6] Again, she responded "yes."[7] Neither the court nor the parties addressed whether Heart Solution—as opposed to the Patels or Biosound—made any such misrepresentations. Finally, the judge asked whether, "Biosound Medical Services and Heart Solution, PC, [were] paid at least [$1.18 million] by Medicare . . . for diagnostic neurological testing that was never supervised by a licensed neurologist." Ms. Patel answered,

---

[4] A41.

[5] Ms. Patel does not contest that she owns Heart Solution. The parties disagree on whether Ms. Patel had any ownership interest in Biosound. But as discussed in III.A, whether Ms. Patel had an ownership interest in Biosound is irrelevant; thus, we do not make any determinations as to this issue.

[6] A43.

[7] A43.

"yes."[8]   Neither the parties nor the court sought to clarify whether one company was paid the entire amount or whether the payments were divided between the companies.

In June 2014, relator Jane Doe brought a *qui tam* suit under the False Claims Act (FCA) against Ms. Patel, Mr. Patel, Biosound, and Heart Solution.  The United States filed a complaint in intervention on November 18, 2015.  The plaintiffs sought to hold the Patels and the two companies civilly liable for defrauding Medicare through the two schemes described above.  Specifically, they claimed the defendants violated two provisions of the FCA by (1) "knowingly present[ing] or caus[ing] to be presented a false or fraudulent claim,"[9] and (2) "knowingly mak[ing], us[ing], or caus[ing] to be made or used a false record or statement material to a false or fraudulent claim."[10]  They also brought common law claims including fraud, unjust enrichment, disgorgement of profits, and payment by mistake of fact.

In March 2016, the plaintiffs moved for partial summary judgment on the two FCA counts, arguing that Ms. Patel's admissions during her plea colloquy established all the elements of the FCA claims and that therefore Heart Solution and Ms. Patel were collaterally estopped from contesting FCA liability.  In their opposition brief, the defendants relied on a statement submitted by Mr. Patel in a pleading entitled "Certification of Kirtish N. Patel."  In it, Mr. Patel claimed

---

[8] A44.  Medicare paid a total of $1,668,954.95.  $1.18 million was for the neurological testing, and the remainder was for the scheme not at issue here.
[9] 31 U.S.C. § 3729(a)(1)(A).
[10] 31 U.S.C. § 3729(a)(1)(B).

6

that Biosound employed a supervising neurologist from 2006 to 2007 and from 2012 to 2014. The defendants argued that the statement raised an issue of fact as to the time frame during which Biosound lacked a supervising neurologist. The statement was not sworn and was not made under the penalty of perjury.

The District Court granted summary judgment to plaintiffs on July 8, 2016, finding that the guilty pleas and accompanying colloquies established all elements of the FCA claims and collaterally estopped the defendants from contesting liability. It also struck the section of Mr. Patel's statement regarding the time frame during which Biosound had a supervising neurologist because it was "self-serving" and conflicted with testimony from the plea colloquy regarding the time frame without any "reasonable explanation." On December 23, 2016, the government moved for summary judgment on the remaining common law claims under the same theory—that the defendants had admitted to all the elements of the claims. The District Court agreed and granted the motion on April 3, 2017.

On May 3, 2017, Ms. Patel and Heart Solution appealed both summary judgment orders.[11] They submit two primary arguments. First, they contend that Ms. Patel cannot be liable for any unsupervised neurological testing at Biosound because she did not own or operate Biosound, and thus had no legal duty to ensure Biosound employed a neurological testing supervisor. Second, they argue that even if we find them liable for the neurological testing issues at Biosound, Mr. Patel's statement created an issue of material

---

[11] Kirtish Patel and Biosound did not appeal.

fact as to the time frame during which the unsupervised testing occurred. We reject both of these arguments.

Moreover, we will affirm the District Court with regard to Ms. Patel's liability on the FCA and common law fraud claims. However, we will vacate the District Court's findings that (1) Heart Solution is estopped from contesting liability and damages for all claims, and (2) Ms. Patel is estopped from contesting liability and damages for the remaining common law claims.

## II.

The District Court had jurisdiction under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1367. We have jurisdiction of this appeal under 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment, applying the same standard as the district court.[12] Under this standard, a court will "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13]

## III.

We first address Ms. Patel's and Heart Solution's two main arguments on why the District Court erred in granting summary judgment. First, they contend that Ms. Patel cannot be liable for Biosound's unsupervised testing because she did not possess an ownership interest in Biosound and merely

---

[12] *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).
[13] Fed. R. Civ. P. 56(a).

worked as an employee. We reject this argument and hold that ownership interest is irrelevant to FCA liability. Second, they argue that even if Ms. Patel is liable for Biosound's fraud, Mr. Patel's statement created a triable issue of fact as to the years during which Biosound lacked a supervising neurologist. We conclude that Mr. Patel's statement cannot create a disputed issue of fact on summary judgment because it was not sworn or made under penalty of perjury.

**A.**

We address the issue of ownership first. Ms. Patel argues that because she did not have any ownership interest in Biosound, she had no duty to ensure that Biosound employed a supervising neurologist and was not in charge of ensuring Biosound's compliance with Medicare regulations. However, whether Ms. Patel had an ownership interest in Biosound is irrelevant to her liability under the FCA.[14] There are four elements to the two FCA claims brought here: "falsity, causation, knowledge, and materiality."[15] Ownership is not one of them. Although corporations and individuals with ownership interests—such as board members and

---

[14] Ms. Patel also makes this argument in her brief with respect to common law fraud, stating that "there is no evidence that Nita Patel made material misrepresentations to Medicare regarding supervision of the neurological testing that was performed at Biosound," supposedly because she did not own Biosound. This argument fails on its face because she plainly admitted in her plea colloquy that she made such misrepresentations.

[15] *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 487 (3d Cir. 2017) (citations omitted).

9

executives—are typically the parties investigated and sued for FCA violations, individuals at all levels of a company have been found liable under the FCA.[16]  We conclude that individual employees with no ownership interest in a company can be liable under Sections 3729(a)(1)(A) and 3729(a)(1)(B) of the FCA.

This conclusion, that an ownership interest is not required for FCA liability, is consistent with the language of the FCA.  Section 3729 establishes civil penalties for "[a]ny person" in violation of its provisions.[17]  The FCA does not define the term "person," but the Supreme Court has found that the meaning of the word has not changed since 1863, when Congress passed the original FCA.[18]  There is no doubt that Congress intended the term "person" to include natural

---

[16] *See, e.g.*, *United States v. Krizek*, 111 F.3d 934, 942 (D.C. Cir. 1997) (wife of psychiatrist who worked as an employee in his practice was liable under FCA); *United States v. Menominee Tribal Enterprises,* 601 F. Supp. 2d 1061, 1071 (E.D. Wis. 2009) (employees of a tribe are "persons" under the FCA); *U.S. ex rel. Burlbaw v. Regents of N.M. State Univ.*, 324 F. Supp. 2d 1209, 1215 (D.N.M. 2004) ("[U]nder the FCA, state employees are 'persons' who may be sued if they are sufficiently involved in the submission of a false claim to the United States.").

[17] 31 U.S.C. § 3729(a)(1).

[18] *See Cook County, Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 125 (2003).

persons. There is no suggestion in the FCA that an ownership interest is necessary to the definition of "person."[19]

Recent Department of Justice (DOJ) guidance regarding the FCA is consistent with our holding that ownership is not required for FCA liability. In 2015, then–Deputy Attorney General Sally Yates issued a memo regarding corporate fraud and wrongdoing, including FCA enforcement.[20] The memo explicitly states that the DOJ should focus on "seeking accountability from the individuals who perpetrated the wrongdoing."[21] The memo states that the DOJ should "fully leverage its resources to identify culpable individuals *at all levels* in corporate cases"[22] and that DOJ "lawyers should not agree to a corporate resolution that

---

[19] *Id.* at 125 ("[T]he Court . . . recognized the presumption that the statutory term 'person' 'extends as well to persons politic and incorporate, as to natural persons whatsoever.'") (quoting *United States v. Amedy*, 412, 6 L.Ed. 502 (1826)). Even if the term's meaning was not clear, the Dictionary Act resolves the question. *See Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2793 (2014) ("The Dictionary Act's definition [of the term person], however, controls only where context does not indicate otherwise.") (citations omitted). The Dictionary Act's definition of the term "person" includes "individuals" and does not indicate any necessity for ownership interests. *See* 1 U.S.C. § 1.

[20] *See* Memorandum from Sally Q. Yates on Individual Accountability for Corporate Wrongdoing to the DOJ, at 4 (Sept. 9, 2015) (mentioning liability under 31 U.S.C. § 3729 explicitly).

[21] *Id.* at 1.

[22] *Id.* at 2 (emphasis added).

11

includes an agreement to dismiss charges against, or provide immunity for, *individual officers or employees*."[23] It is clear from the language of the memo that, in the eyes of the DOJ, liability does not depend on ownership and employees are subject to suit.

Because ownership is irrelevant to FCA liability, the first argument fails.

**B.**

Ms. Patel and Heart Solution also argue that there remains a triable issue of fact regarding the years during which Biosound employed a supervising neurologist. In support of this argument, they rely on Mr. Patel's statement, which claims that Biosound employed a supervising neurologist during 2006-2007 and 2012-2014. We conclude that because Mr. Patel's statement was both unsworn and not given under the penalty of perjury, it was insufficient to create an issue of fact on summary judgment.

This holding is consistent with the Federal Rules of Civil Procedure, authority from our sister circuits, and our own precedent. A 2010 amendment to the Advisory Committee Notes on Federal Rule 56(c)(4), which governs evidence submitted on summary judgment, states "that while 'a formal affidavit is no longer required' on summary judgment, a certification submitted as a substitute for an affidavit must be subscribed in proper form as true under penalty of perjury." This amendment incorporates a statutory exception to the general rule that affidavits must be sworn to

---

[23] *Id.* at 5 (emphasis added).

be considered on summary judgment. The statute, 28 U.S.C. § 1746, provides that when a matter is required to be supported by a sworn affidavit, the matter can instead be supported by an unsworn "declaration, certificate, verification, or statement," as long as the statement is made under penalty of perjury and dated. Thus, while an unsworn statement may be considered on summary judgment, an unsworn statement that has not been made under penalty of perjury cannot.

The Fifth Circuit Court of Appeals reached the same conclusion when presented with this issue. In *Nissho-Iwai American Corp. v. Kline*,[24] the only evidence the nonmoving party submitted on summary judgment was an statement that was "neither sworn nor its contents stated to be true and correct nor stated under penalty of perjury."[25] The court held that unsworn statements, on their own, generally cannot raise an issue of fact as to preclude summary judgment unless the statement falls within the statutory exception to this rule

---

[24] 845 F.2d 1300 (1988).
[25] *Id.* at 1305-06.

under Section 1746.[26]  The Second and Seventh Circuit Courts of Appeals have come to similar conclusions.[27]

Although we have not directly addressed this issue in a precedential opinion, today's holding is in line with our prior rulings.  In *Woloszyn v. County of Lawrence*,[28] we held that a district court did not err in refusing to consider an unsworn statement on summary judgment because it did not comply with Rule 56.[29]

Accordingly, Mr. Patel's statement is incompetent summary judgment evidence.  His statement is the only evidence Ms. Patel and Heart Solution submitted on the issue of the whether Biosound had a supervising neurologist at any

---

[26] *Id.* at 1306-07; *see also Ion v. Chevron USA, Inc.*, 731 F.3d 379, 382 n.2 (5th Cir. 2013) ("Although unsworn documents usually cannot raise fact issues precluding summary judgment, [the] declaration can be considered pursuant to the statutory exception found in 28 U.S.C. § 1746.").

[27] *See In re World Trade Center Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) (unsworn statements can be considered on summary judgment as long as they comply with 28 U.S.C. § 1746); *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) ("Affidavits are admissible in summary judgment proceedings if they are made under penalties of perjury; only unsworn documents purporting to be affidavits may be rejected").

[28] 396 F.3d 314 (3d Cir. 2005).

[29] *Id.* at 322-23.  *Woloszyn* was decided before the 2010 amendments to the Advisory Notes, and thus, did not consider whether the statement complied with the 28 U.S.C. § 1746 exception.

point between 2006 and 2014.[30]    Therefore, there is no genuine dispute of material fact as to whether Biosound had a supervising neurologist.

## IV.

We now turn to collateral estoppel as applied to Heart Solution and conclude that Heart Solution is not collaterally estopped from contesting liability or damages for the claims against it.    Under federal common law, collateral estoppel applies when "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment."[31]    Moreover, "collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate that issue in the earlier case."[32]    In situations involving the collateral

---

[30] Ms. Patel and Heart Solution also argue that the words "supervision" and "the" in the sentencing judge's questioning are ambiguous and create an issue of material fact as to the time frame during which Biosound employed a supervising neurologist.  This argument fails.  Even if these words were ambiguous in the context of the plea colloquy, the Appellants have put forth no evidence supporting Ms. Patel's understanding of such terms.  Thus, these arguments are insufficient to create an issue of fact at the summary judgment stage.
[31] *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992) (citations omitted).
[32] *Allen v. McCurry*, 449 U.S. 90, 95 (1980) (citations omitted).

estoppel effects of a prior criminal judgment, "the court must examine the record of the criminal proceeding," including the plea colloquy, "to determine specifically what issues were decided."[33] "[R]easonable doubt as to which issues were decided by a prior judgment should be resolved against using such judgment as an estoppel."[34]

Heart Solution cannot be estopped based on Ms. Patel's criminal conviction and plea colloquy. The United States charged and convicted only Mr. and Ms. Patel of healthcare fraud under 18 U.S.C. § 1347—not Heart Solution.[35] As such, Heart Solution did not have *any* opportunity, much less a "full and fair opportunity,"[36] to litigate any issue involved in this appeal. Moreover, whether Heart Solution defrauded Medicare by submitting false reports about neurological testing was not actually litigated or determined by a final judgment in the criminal proceeding. Ms. Patel's plea testimony and conviction certainly speak to *her* role in *Biosound*'s schemes to defraud Medicare, but they do not establish that Heart Solution had any role in this scheme.

Thus, we will vacate the District Court's holding that Heart Solution is estopped.

---

[33] *Chisholm v. Def. Logistics Agency*, 656 F.2d 42, 48 (3d Cir. 1981).

[34] *Id.* at 50 (citing *Kauffman v. Moss*, 420 F.2d 1270, 1274 (3d Cir. 1970)).

[35] *See* Criminal Complaint, *United States v. Patel*, No. 15-cr-592 (D.N.J. June 9, 2014), ECF No. 1.

[36] *Allen*, 449 U.S. at 95.

**V.**

Next, we address Ms. Patel's liability for FCA violations and common law fraud and conclude that (1) the District Court properly found that she was estopped from contesting the falsity and knowledge elements of these claims; and (2) the Government met its burden to show materiality and causation.

An FCA violation has four elements: "falsity, causation, knowledge, and materiality."[37] Ms. Patel admitted that: (1) she "falsely represented to Medicare that the neurological testing being performed at Biosound Medical Services was being supervised by a licensed neurologist when, in fact, it was not;" and (2) she "knowingly made these false representations to Medicare." As a result, she is collaterally estopped from denying the falsity and knowledge elements of the FCA claims.

We also conclude that the materiality element has been satisfied[38] even though the District Court did not apply Supreme Court precedent. In June 2016, the Supreme Court decided *Universal Health Services, Inc. v. United States ex*

---

[37] *United States ex rel. Petratos v. Genentech Inc*., 855 F.3d 481, 487 (3d Cir. 2017) (citations omitted).

[38] Because we find that the materiality element of the FCA claims has been satisfied, we need not reach the question of whether Ms. Patel is collaterally estopped from contesting materiality. Therefore, we make no determinations as to whether materiality under 18 U.S.C. § 1347—the criminal statute under which Ms. Patel was convicted—and materiality under the FCA are the same "essential element."

*rel. Escobar*,[39] where it held that materiality is an element of all FCA claims, regardless of whether the specific statutory provision lists materiality as an element.[40] The Court then provided guidance on how the materiality requirement should be applied. It explained that a misrepresentation is not material merely because the government designates compliance with a particular regulatory requirement as a condition of payment or because "the Government would have the option to decline to pay if it knew of the defendant's noncompliance [with the regulation]."[41] In fact, it is "very strong evidence" that a requirement is not material "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated."[42] Thus, materiality "cannot be found where noncompliance is minor or insubstantial."[43] On the other hand, materiality may be found where "the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement."[44]

The District Court did not apply *Escobar* in its analysis. It relied exclusively on the provision labeling

---

[39] 136 S. Ct. 1989 (2016).

[40] *Id.* at 2002-03; *see also United States ex rel. Spay v. CVS Caremark Corp.*, 875 F.3d 746, 763 (3d Cir. 2017) ("Despite the lack of a materiality requirement, the Supreme Court had no trouble finding that the FCA's materiality requirement also applied to this section.").

[41] *Escobar*, 136 S. Ct. at 2003.

[42] *Id.*

[43] *Id.*

[44] *Id.*

supervision of diagnostic testing a condition of payment rather than looking to the record for other factors, as provided in *Escobar*, bearing on the materiality analysis.[45] However, when we examine the record, we conclude that there is no issue of fact as to materiality under *Escobar.*

The initial burden was on the government to show materiality, and it met its burden when it submitted that, pursuant to the regulation, Medicare would not pay the claims in the absence of a certification from a supervising neurologist. Neither Ms. Patel nor any other defendant put forth any evidence indicating otherwise. She made no showing that noncompliance with the supervision requirement was "minor or insubstantial"[46] or that Medicare generally pays this type of claim "in full despite its actual knowledge that certain requirements were violated."[47] Because the Government met its burden to show materiality and Ms. Patel put forth no evidence in rebuttal, the element of materiality was properly established, and there is no need to remand this case to the District Court to determine materiality under *Escobar*.

This conclusion as to materiality also means that there was causation—the final FCA element. Because these misrepresentations were material, they caused damage to

---

[45] *Escobar* specifically states that whether a "provision is labeled a condition of payment is relevant to but *not dispositive* of the materiality inquiry." *Id.* at 2001 (emphasis added).

[46] *Id.* at 2003.

[47] *Id.*

19

Medicare. In other words, but for the misrepresentations, Medicare would never have paid the claims.

Next, we address the District Court's holding that Ms. Patel's conviction also estops her from contesting liability as to common law fraud. The elements of fraud under New Jersey law are (1) knowingly making a material misrepresentation; (2) an intention that the other person rely on the misrepresentation; (3) reasonable reliance by the other person; and (4) resulting damages.[48] We agree with the District Court that Ms. Patel is estopped from denying that she knowingly made misrepresentations to Medicare regarding the neurological testing being performed at Biosound. Moreover, for the same reasons as in the FCA claim, we find that the materiality and causation/reliance elements of common law fraud have been met. Therefore, we will affirm the District Court's determination as to common law fraud.

## VI.

Turning to the remaining common law claims—unjust enrichment, disgorgement of profits, and payment by mistake of fact—we hold that Ms. Patel is not collaterally estopped from denying liability or damages as to these claims.

An essential element of all three of these claims is that the defendant retained funds—payments from Medicare in this case. Unjust enrichment requires a showing *"that defendant received a benefit* and that retention of that benefit

---

[48] *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005).

without payment would be unjust."[49]    A disgorgement of profits claim requires that the defendant have profit or revenue to disgorge.[50]    And payment by mistake of fact allows the United States to recover money from a defendant that "its agents have wrongfully, erroneously, or illegally paid."[51]

Whether Ms. Patel or Heart Solution specifically—as opposed to Mr. Patel and Biosound—retained any from funds from Medicare was not determined in the criminal case so as to estop Ms. Patel from contesting liability for these claims. In order to find that Ms. Patel is collaterally estopped, we must find that the issue of whether she retained funds was (1) involved and litigated in the prior action, (2) actually determined by a final judgment, and (3) essential to the conviction.[52]  Ms. Patel's conviction and plea colloquy do not permit such findings.  First, 18 U.S.C. § 1347 criminalizes knowingly "defraud[ing] any health care benefit program" *or* "obtain[ing] . . . money . . . owned by . . . any health care benefit program."  Thus, Ms. Patel need not have obtained money from Medicare to be liable under Section 1347; she could have just defrauded Medicare.

Her plea colloquy does not establish that she obtained funds from Medicare.  Ms. Patel admitted that she submitted false claims to Medicare about the neurological testing at her

---

[49] *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994) (emphasis added).

[50] *See Commodity Futures Trading Comm'n v. Am. Metals Exch. Corp.*, 991 F.2d 71, 76 (3d Cir. 1993).

[51] *United States v. Wurts*, 303 U.S. 414, 415 (1938).

[52] *See In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992).

husband's company, Biosound. She also admitted that Biosound and Heart Solution were paid approximately $1.18 million from Medicare for unsupervised neurological testing. These admissions may suggest that Ms. Patel and/or Heart Solution retained at least part of the $1.18 million, but they are not sufficient to estop Ms. Patel from arguing and submitting evidence to show otherwise. It is possible that Mr. Patel and Biosound retained the entire benefit and Ms. Patel and Heart Solution retained nothing. The criminal proceedings do not speak to this question, much less resolve it. Where there is "reasonable doubt as to which issues were decided by a prior judgment" we cannot conclude that collateral estoppel applies.[53]

This same reasoning applies to the question of damages. Ms. Patel is not estopped from contesting damages because neither her conviction nor colloquy conclusively establish she was ever paid by Medicare for unsupervised neurological testing.

As such, we will reverse the District Court's grant of summary judgment on the unjust enrichment, disgorgement of profits, and payment by mistake of fact claims. We will also reverse the District Court's finding as to damages assessed against Ms. Patel with regard to these claims.

## VII.

For the foregoing reasons, we will affirm the District Court's judgment on the issue of Ms. Patel's liability and

---

[53] *Chisholm v. Def. Logistics Agency*, 656 F.2d 42, 50 (3d Cir. 1981).

22

damages under the FCA for false claims submitted to Medicare for unsupervised neurological tests and on the issue of Ms. Patel's common law fraud. We will reverse the portions of the District Court's summary judgment orders with respect to Heart Solution and with respect to Nita Patel's liability and damages for the remaining common law claims and remand this case to the District Court for further proceedings consistent with this opinion.