**FEDERAL SAVINGS AND LOAN IN-SURANCE CORPORATION, an Agency of the United States, Plaintiff-Appellee,**

v.

**Quinn HOGAN, Defendant-Appellant.**

**No. 71-1902.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1973.

Decided March 29, 1973.

Douglas W. Graham, Chicago, Ill., for defendant-appellant.

Merrill Shepard, Donald Page Moore, Kael B. Kennedy, Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, DUFFY, Senior Circuit Judge, and SPRECHER, Circuit Judge.

SPRECHER, Circuit Judge.

Defendant Quinn Hogan appeals from a jury verdict giving the plaintiffs a $20,000 judgment against him for conspiracy to defraud. We reverse.

Plaintiff Federal Savings and Loan Insurance Corporation, a federal agency (FSLIC), became the owner of the property, assets and causes of action of Service Savings and Loan Association, an Illiois savings and loan institution in Summit, Illinois, in September, 1965, as a result of an agreement under which plaintiff enabled Service Savings to pay its depositors and creditors in full. Thereafter, on February 3, 1967, plaintiff FSLIC filed a complaint in the Northern District of Illinois against various officers and directors of Service Savings, along with others, charging the defendants with a civil conspiracy to mismanage and defraud Service Savings. Hogan was not named in this complaint. On July 17, 1969, FSLIC filed its second amended complaint, again naming various officers and directors of Service Savings as defendants, and this time also including Hogan as a defendant. The second amended complaint alleged a conspiracy to defraud Service Savings in conjunction with loans to three properties.

The first of these properties was Vernon Hills, Inc., or the Vernon Hills Country Club. Hogan was the president of Vernon Hills. Service Savings loaned Vernon Hills $700,000 in November, 1960. The loan was refinanced and increased to $850,000 in November, 1961. Service Savings' security for the loan was a first mortgage on the Vernon Hills Country Club property.

Vernon Hills filed a bankruptcy petition in December, 1962. In June, 1963, Service Savings discovered that the legal description of the property included in its mortgage on Vernon Hills included only twelve holes of the eighteen hole golf course supposedly covered by the mortgage. Service sought reformation of the mortgage to include the whole eighteen holes on the ground of mutual mistake of fact arising from a scrivener's error. This petition was later amended to include allegations of fraud and deceit. The FSLIC filed an answer to Service Savings' reformation petition, alleging that it owned the property sought to be included in the reformation as assignee of the prior owner, Hillside Savings and Loan Association. The Special Master who heard the petitions found that no mutual mistake of fact had been proved, that fraud by the debtor, Vernon Hills, or any of its agents had not been proved, and that the proof was insufficient that the parties intended to include the additional property within that covered by the mortgage. Reformation was therefore denied. The Special Master's findings were approved by both the District Court and this Court. In re Vernon Hills, Inc., 348 F.2d 4 (7th Cir. 1965).

Unsuccessful in its efforts to achieve title to a complete eighteen hole course in the bankruptcy court, Service Savings, through its assignee FSLIC, purchased the remaining property in May, 1966 for $120,000. It then filed suit, although not until 1969 was Hogan added as a defendant, alleging a conspiracy to defraud Service Savings and claiming as its damages on the Vernon Hills transaction the $120,000 paid for the remainder of the golf course.

Count I of the FSLIC's complaint [1] names as defendants, in addition to Hogan, William and Edward Szarabajka, president and executive vice president of Service Savings respectively; Joseph Nowak, attorney for Service Savings;

[1]. All references, unless otherwise indicated, refer to the second amended complaint, filed July 17, 1969.

Edward Kowalko and Joseph Racina, members of the board of directors of Service Savings; Vernon Sherman, a real estate investor and developer and a member of the board of directors of another defendant, the Virginia Corporation; Louis Sherman, identified in the complaint only as an attorney and father of Vernon Sherman; Jerome Morris, an attorney and the president and sole owner of defendant Virginia Corporation; John Parrish, a mortgage broker; the Virginia Corporation, a corporation engaged in the lending business; and Kenneth Russ and Harry Prince, each engaged in the business of lending money. These defendants were alleged to have conspired to defraud and mismanage Service Savings in a multitude of ways, but the specific acts charged to be in furtherance of the conspiracy may be generally summarized as follows: (1) causing Vernon Hills to pay large sums of money as bribes to defendants William Szarabajka and Nowak in order to obtain a loan from Service Savings; (2) concealing from Service Savings the fact that defendant Vernon Sherman was insolvent and unemployed; (3) causing a co-conspirator to prepare and certify appraisals which would attribute a fraudulent and excessive value to the Vernon Hills security property as well as another security property known as Riverwoods; (4) causing fraudulent Mulhern appraisals to be placed in the files of Service Savings in order to persuade the plaintiff and examining authorities that the Vernon Hills and Riverwoods loans were made on adequate security and not because of bribes; (5) causing the defendant Vernon Sherman to pay large sums of money as bribes to Nowak and the two Szarabajkas in order to obtain the Riverwoods loan; (6) causing the diversion of more than $150,000 in Vernon Hills, Riverwoods, and Ramlin Rose (another real estate venture) loan proceeds in order to pay the costs of inducing certain money brokers to deposit enough money in Service Savings to fund these loans. Additional allegations detailed the alleged fraud and bribery in connection with the Riverwoods and Ramlin Rose loans.

The 35-page complaint charges Hogan by name with agreeing with others to make a cash bribe in exchange for the Vernon Hills loan, introducing Vernon Sherman to those who could procure the Riverwoods loan for him, agreeing with others to help cause Service Savings to make the Riverwoods loan, and accepting a new car and cash from Riverwoods proceeds in return for help in arranging the Riverwoods loan.

Prior to trial defendants William and Edward Szarabajka and John Parrish defaulted through failure to answer the charges against them. In addition, the district judge instructed the jury that the evidence regarding a conspiracy in the Vernon Hills transaction was to be considered only against Hogan and Nowak, and that no evidence had been presented tying any of the other defendants to this alleged conspiracy. On February 8, 1971, the jury returned a verdict absolving Nowak of any liability with regard to the Vernon Hills transaction but holding Hogan liable for $20,000 on this transaction, and absolving Hogan of any liability with regard to the Riverwoods loan but holding Nowak, Vernon Sherman and Jerome Morris liable in the sum of $150,000 on this transaction. Additional verdicts were returned finding liability in favor of the plaintiff and against certain defendants, not including Hogan, on Count II of the complaint. The district judge denied Hogan's post-trial motions for relief based on collateral estoppel in consequence of the prior decision denying reformation of the mortgage and absence of any proof on the issue of damage.

We have concluded that Hogan was entitled to assert his claim of collateral estoppel although not pleaded as an affirmative defense and that, in the alternative, if the fraud issue in the earlier case differed in any respect from that asserted in the trial in this case then plaintiff failed to prove any damage.

Plaintiff FSLIC argues that the trial court's ruling denying Hogan's estoppel claim was correct on several grounds. It argues that the claim is barred by Hogan's failure to comply with Fed.R. Civ.P. Rule 8(c), which requires that defenses such as estoppel be pleaded affirmatively. FSLIC also argues that collateral estoppel is not applicable here because the fraud issues in the two cases were different. Other defenses, such as lack of mutuality, are also raised.

Fed.R.Civ.P. Rule 8(c) requires that a party responding to a preceding pleading "set forth affirmatively . . . estoppel . . . and any other matter constituting an avoidance or affirmative defense." It is undisputed that Hogan did not comply with this rule nor properly seek to amend his pleadings during the trial when it became apparent that he desired to offer the earlier case in his defense.[2] The courts have, however, relaxed the pleading requirement in the interests of justice in various instances, such as where the facts underlying the claim of *res judicata* have been pleaded by the plaintiff in his complaint, Sylk v. United States, 331 F.Supp. 661 (E.D. Pa.1971), and where the plaintiff's own evidence discloses the facts or proof, Bradford Audio Corp. v. Pious, 392 F.2d 67, 73 (2nd Cir. 1968), 2A Moore, Federal Practice ¶ 8.27 [3] at 1853–54 (2d ed. 1972). Furthermore, Rule 15(b), Fed.R.Civ.P., specifically provides that

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to amend does not affect the result of the trial of these issues."[3]

■ The issue decided by the bankruptcy referee, and affirmed by both the district court and the Seventh Circuit, in the earlier Vernon Hills case was whether the mistake in the land description which was part of Service Savings mortgage on the Vernon Hills Country Club was the result of fraud on the part of Vernon Hills or any of its agents. But as plaintiff FSLIC itself states, the issue raised by the pleadings "concerning Hogan is whether he *participated in a fraud in inducing by bribery and other means the granting of the loans* secured by the mortgage." (Plaintiff's brief at 23; emphasis in original.) Thus, to the extent that the proof at trial was limited to proof on this issue there was neither any need, nor would it have been appropriate, for Hogan to raise the defense of collateral estoppel pursuant to the earlier case. To the extent, however, that Hogan's liability in this case rests upon his participation in

2. Hogan, appearing pro se in a complicated, multi-party case in which the other defendants were represented by accomplished counsel, was obviously at a disadvantage in his attempt to present evidence. (There is in fact very little evidence in the record either offered by or about Hogan, despite the fact that the record on appeal includes 27 volumes of depositions, 6 volumes of exhibits and 6000 pages of transcript.) Nevertheless, Hogan did ask for a directed verdict on the ground of collateral estoppel and attached a copy of the Seventh Circuit opinion in the earlier Vernon Hills case to his petition. He also sought post-trial relief on this ground, at that time attaching additional exhibits.

3. We must also be mindful of the Supreme Court's repeated warning that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 181–182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) ; Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Fed.R.Civ.P. Rule 1 itself provides that the federal rules are to be construed "to secure the just, speedy, and inexpensive determination of every action."

the preparation of a fraudulent mortgage, the prior judgment, being inconsistent with that holding, is relevant and collateral estoppel is an appropriate defense. Furthermore, the fact that the issue of fraud in the mortgage was raised by the plaintiff during the course of the trial, and not in the pleadings, precludes plaintiff from asserting Fed. R.Civ.P. Rule 8(c) as a bar to Hogan's estoppel claim, because the issue was necessarily then tried with the express consent of the plaintiff. Fed.R.Civ.P. Rule 15(b); Bradford Audio Corp. v. Pious, *supra,* 392 F.2d at 73–74; 3 Moore, Federal Practice ¶ 15.13 [2] at 987–88 (2d ed. 1972).

██ Neither can the lack of mutuality bar Hogan's estoppel claim. Hogan was not a party to the reformation petition, except to the extent that he was in privity with the corporate debtor as president of Vernon Hills. The claim in the earlier case seeking reformation on the ground of fraud in the mortgage by Vernon Hills or its agents was asserted by Service Savings, and FSLIC, the plaintiff in this action, sues only as the assignee of Service Savings. But "the trend in the federal courts is away from the rigid requirements of mutuality. . . . " IB Moore, Federal Practice ¶ 0.412 at 74 (1972 Supp.). As the Supreme Court noted in repudiating the doctrine of mutuality in certain patent litigation (where the doctrine had previously been asserted to have special validity), in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 324, 91 S.Ct. 1434, 1440, 28 L.Ed.2d 788 (1971):

"Many state and federal courts rejected the mutuality requirement, especially where the prior judgment was invoked defensively in a second action against a plaintiff bringing suit on an issue he litigated and lost as plaintiff in a prior action. The trend has been apparent in federal-question cases." (Footnotes omitted.)

In that case the Court also quoted approvingly Judge Friendly's citation in Zdanok v. Glidden Co., 327 F.2d 944, 954 (2nd Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964), of Bentham's statement of over a century ago that the concept of mutuality of estoppel was "destitute of any semblance of reason, and . . . 'a maxim which one would suppose to have found its way from the gaming-table to the bench'. . . ." *Blonder-Tongue, supra,* 402 U.S. at 322–323, 91 S.Ct. at 1439. We hold, in line with the many other courts which have reached the same conclusion, that, at least when used "defensively,"[4] mutuality of estoppel should not be required. *See* Zdanok v. Glidden Co., *supra,* 327 F.2d at 954–956; Bruszewski v. United States, 181 F.2d 419 (3rd Cir.), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950); Bernhard v. Bank of America, 19 Cal.2d 807, 811–813, 122 P.2d 892, 894–895 (1942). *See generally,* cases and articles cited in *Blonder-Tongue, supra,* 402 U.S. at 322–327, 91 S.Ct. 1434.

██ Inasmuch as Hogan's claim of collateral estoppel was not barred by Rule 8(c) or lack of mutuality, the issue is whether the fraud question decided by the earlier case is identical to at least one issue in this case.[5] As stated above, we agree with the plaintiff that the pleadings in this case did raise a different question, namely, whether Hogan participated in a conspiracy to defraud Service Savings by means of bribery.

4. *See* Currie, "Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine," 9 Stan.L.Rev. 281 (1957).

5. In a memorandum decision on the defendant's post-trial motions, the district court held that the Seventh Circuit opinion in the earlier Vernon Hills case showed that the petition before the special master was limited to the issue of mistake and that the issue of fraud was not decided. Federal Savings and Loan Ins. Corp. v. Szarabajka, 330 F.Supp. 1202, 1206 (N. D.Ill.1971). We do not agree. The Court of Appeals opinion discusses the issue of fraud fully, concluding that the issue ultimately turned on determinations of credibility of witnesses made by the trier of fact. 348 F.2d at 8–9.

Our difficulty with accepting this difference as conclusive on the issue before us arises from the following facts: (1) plaintiff argued the defective mortgage to the jury as at least part of the basis for holding Hogan liable for fraud; (2) the trial court's instructions clearly contemplate liability based on an allegedly fraudulent mortgage; (3) the jury's verdict is inconsistent with finding that Hogan's liability was based on a bribery conspiracy; and (4) if the basis of the judgment against Hogan is that he obtained a loan because of bribes, and that judgment is not based on fraud in the misdescription of a mortgage, then the jury was given no basis upon which to assess damage.

Although plaintiff argues to this court that the basis for Hogan's liability was not fraud in a mortgage description, during closing argument to the jury plaintiff's attorney alluded repeatedly to the defective deed and the twelve-hole golf course. The district court's instructions to the jury also clearly contemplated liability based upon a fraudulent mortgage. In his description of Count I, the trial judge stated that the complaint charged the defendants with a conspiracy to defraud Service Savings, in part, "by making false and fraudulent pretenses, representations and promises to it, . . . " He also instructed the jury that the measure of damages in the Vernon Hills transaction "is the amount which the plaintiff paid on May 31, 1966, to purchase six holes of the Vernon Hills golf course, with interest at the rate of five per cent, from May 31, 1966." Neither of these instructions is consistent with any theory except fraud through the defective land description.

The jury, as might be expected following the instructions, reached a verdict inconsistent with a theory of conspiracy to obtain loan funds through bribery. While holding Hogan liable for $20,000, it found the person actually alleged to have taken the bribes, Service Savings' attorney Nowak, not liable for any amount. If the jury was basing its finding of liability against Hogan on a theory of bribery conspiracy, it almost certainly would have also found liability in the person alleged to have taken the bribe and to have handled all negotiations between Hogan and Service Savings. This conclusion is supported by the fact that the jury failed to find Hogan liable on the plaintiff's bribery theory with regard to the other transactions, in none of which could Hogan have been liable on any other theory.

We conclude that Hogan's claim of estoppel should have been allowed inasmuch as plaintiff tried its case to the jury at least in part based on fraud in the mortgage, the theory of damages was based entirely on the defective mortgage, and the jury almost certainly followed these instructions.

■■ Even if we should be mistaken in our belief that estoppel was appropriate here, however, we would have to reverse this judgment on the basis of the fact that the only evidence of damage was the cost of acquiring the land not covered by the defective mortgage. Plaintiff's argument that estoppel is not appropriate in this case because the allegedly fraudulent mortgage is not in issue is inconsistent with measuring damages on the basis of the defective land description.[6] No other evidence on the issue of damages having been presented, the jury was without any proper instruction on damage.

Reversed.

6. We note that showing the cost of acquiring the land, by itself, without evidence of the price obtained on resale, would not in any event be sufficient proof of damage.