David PRINZ

v.

**GREATE BAY CASINO CORP., t/a Brighton Casino Hotel and also trading as Sands Casino Hotel.**

**Appeal of GREATE BAY HOTEL AND CASINO, INC.**

No. 82–1361.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Jan. 6, 1983.

Decided April 28, 1983.

Sur Petition for Rehearing May 26, 1983.

Joseph P. Gallagher, Philadelphia, Pa., for appellant.

Michael J. Rutenberg, Ronald N. Rutenberg, Rutenberg, Rutenberg, Rutenberg & Rutenberg, Philadelphia, Pa., for appellees.

Before ALDISERT, GIBBONS and HIG-GINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Greate Bay Hotel and Casino, Inc. (Greate Bay) appeals from a final judgment of $105,000 in favor of David Prinz in his suit for false imprisonment and assault and battery, and from an order denying its motions for judgment notwithstanding the verdict and for a new trial. The judgment was entered on a jury verdict on special verdict interrogatories, which found Greate Bay liable for assault and battery and false imprisonment and awarded $5,000 in compensatory and $100,000 in punitive damages. We hold that the trial court erred in denying Greate Bay's motion for a new trial, and we remand for that purpose.

Greate Bay operates a gambling casino in Atlantic City, New Jersey, which includes a number of blackjack tables. On the evening of May 20, 1981 Prinz an identified card counter was observed playing blackjack in the casino. At that time Greate Bay had a policy against permitting card counters to play blackjack. Prior to May 20, 1981, Prinz had been advised by employees of Greate Bay that, if he attempted to play, he would be ejected as a trespasser. On May 20 employees of Greate Bay advised Prinz to leave or he would be arrested. As the employees escorted him toward the exit, however, a scuffle broke out in the lobby. Prinz was knocked to the floor, handcuffed, and removed to a detention cell in the premises. The Atlantic City police were called and transported Prinz from the detention cell to the police station. There an employee of Greate Bay filed a complaint for defiant trespassing in violation of N.J.Stat.Ann. 2C:18–3(b) (West 1982), and the police made a criminal charge against him.[1]

Prinz was held in the police station for approximately 20 hours. On the morning of May 21, 1981, after conferring with a public defender assigned to the Atlantic City Municipal Court, Prinz appeared in that court, entered a guilty plea to the defiant trespassing charge, and paid a small fine.

In November of 1981 Prinz filed a diversity action against Greate Bay, charging assault and battery and false imprisonment. In its answer Greate Bay pleaded:

> The allegations of false imprisonment are denied. To the contrary, defendant was detained pending the arrival of the Atlantic City Police Department and plaintiff was charged and convicted of defiant trespass.

Appellant's Appendix at 8a (hereinafter designated by page number and "a"). Thus Greate Bay alleged facts which would bar Prinz' false imprisonment claim by virtue of collateral estoppel. *See Kauffman v. Moss,* 420 F.2d 1270, 1274 (3d Cir.1970); *United States v. Schneider,* 139 F.Supp. 826, 829 (S.D.N.Y.1956). The answer did not, however, plead collateral estoppel as an affirmative defense. *See* Fed.R.Civ.P. 8(c).

At trial counsel for Greate Bay elicited testimony from Prinz without objection:

Q. Now concerning the Atlantic City Police Department, the charges there, you pleaded guilty to those charges, didn't you?

A. That's correct, sir.

58a. Thus there is uncontradicted record evidence which would permit, and probably require, a finding of collateral estoppel on

---

1. N.J.Stat.Ann. 2C:18–3(b) (West 1982) provides:

A person commits a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass has been given by: (1) Actual communication to the actor ....

the false imprisonment charge. At the end of the plaintiff's case, Greate Bay moved for a directed verdict on several grounds, among them:

> Then the false imprisonment claim, that he was detained while the Atlantic City Police were called. He was arrested by the Atlantic City Police and eventually pleaded guilty. I submit, your Honor, that that would preclude his false imprisonment claim.

75a. The trial court, without explanation, denied the motion. It was renewed at the end of the entire case and again denied without explanation. 197a. Greate Bay then requested a charge respecting the false imprisonment claim:

> You must consider the fact that the Atlantic City Police Department was notified immediately and took plaintiff into custody and charged him with defiant trespassing. Plaintiff has admitted that he pleaded guilty to this offense.

266a. The court refused this charge, again without explanation. The jury was not given any instruction about the possible significance of the guilty plea. Instead the court, over objection charged:

> Now, the defendant claims that its employees made a lawful civil arrest of the plaintiff for committing the petty disorderly person's offense of defiant trespass. I instruct you as a matter of law that defendant's employees did not have legal authority to arrest the plaintiff for defiant trespass, because, as I told you earlier, the defendant did not have the right to exclude the plaintiff from the casino as a suspected card counter. Therefore, if you find from the evidence that the plaintiff has proven that defendant's employees intentionally detained him against his will, by actual force, for some appreciable period of time, then you should find the defendant liable for false imprisonment.

238–39a.

Greate Bay contended in the trial court, and contends here, that the quoted portion

of the charge is a misstatement of the New Jersey law in effect on May 20, 1981 respecting its obligation to permit card counters to play blackjack in its casinos.[2] But more significantly for present purposes, Greate Bay argues that the court's virtual directed verdict on the false imprisonment charge removed from the jury's consideration the fact that Prinz' guilty plea to the charge of defiant trespass estopped him from contending that he could lawfully remain in the casino. If he could not lawfully remain there was probable cause for his detention as a defiant trespasser, which in New Jersey is a defense to a charge of false imprisonment. *E.g., Jorgensen v. Pennsylvania Railroad Co.,* 38 N.J.Super. 317, 349, 118 A.2d 854, 872 (App.Div.1955).

■ In response, Prinz relies on Rule 8(c). He contends that an affirmative defense not pleaded in the district court is not available on appeal. That is the general rule. *Sartin v. Commissioner of Public Safety,* 535 F.2d 430, 433 (8th Cir.1976). However, Fed.R.Civ.P. 15(c) must also be taken into account. It provides that issues tried by the express or implied consent of the parties "shall be treated in all respects as if they had been raised in the pleadings." Professor Moore notes:

> If an affirmative defense is not pleaded it is waived to the extent that the party who should have pleaded the affirmative defense may not introduce evidence in support thereof, unless the adverse party makes no objection in which case the issues are enlarged....

2A *Moore's Federal Practice* ¶¶ 8.27[3] at 8–251, 8–253 (2d ed. 1981). The rule is particularly applicable where, as here, the facts underlying the affirmative defense have been pleaded. *Federal Savings and Loan Insurance Corporation v. Hogan,* 476 F.2d 1182, 1186 (7th Cir.1973).

■ Here the facts on which the defense of collateral estoppel rests were pleaded in

---

**2.** The law was far from certain. *See Uston v. Resorts International Hotel, Inc.,* 89 N.J. 163, 445 A.2d 370 (1982).

the answer. They were introduced in evidence without objection. They were called to the court's attention in a motion for directed verdict, which was renewed at the end of the entire case. They were the subject of a timely request for charge. Prinz does not suggest that he has any evidence which might have been offered to overcome the collateral estoppel effect of his guilty plea. In this totality of circumstances Rule 15(c) rather than Rule 8(c) provides the appropriate frame of reference.

Because the collateral estoppel defense, although tried, was taken from the jury, the verdict cannot stand. The assault and battery verdict does not suffer from the same defect as the false imprisonment verdict, but because the jury did not make separate damage awards the two are inseparable.

The order denying Greate Bay's motion for a new trial will be reversed and the case remanded for that purpose.

**A. LEON HIGGINBOTHAM, Jr., Circuit Judge, dissenting.**

I respectfully dissent because the majority erroneously assumes the availability and applicability of collateral estoppel in reversing the order denying Greate Bay's motion for a new trial. The majority failed to require defendant to satisfy both its procedural burden of pleading collateral estoppel affirmatively as a defense and its substantive burden of proving the propriety of its application in the instant case.

In short, with this decision, the majority creates an unnecessary trap for even the most conscientious trial judge. In this case the trial judge will be reversed because of the operation of an affirmative defense which the defendant's counsel failed to articulate in his pleadings, during the course of trial or in his post trial motions. Defendant's counsel not only failed to articulate the relevant affirmative defense of collateral estoppel, he also failed to offer into evidence the complaint on which the prior action was based and the record of the prior proceeding in order to demonstrate the propriety of its application to bar plaintiff's false imprisonment claim.

## I.

### Facts

David Prinz was accused of being a cardcounter at blackjack by the Brighton Casino, and after ownership changed he was accused again, this time by the new owner Greate Bay Casino Corporation (Greate Bay) trading as Sands Casino (Casino). The Casino's security guards ordered Prinz to leave the premises simply because they believed him to be a cardcounter. The plaintiff had not been disorderly, nor had he caused any disturbance at the Casino. One of the Casino's employees stated that Prinz had permission to enter the Casino and remain on the premises. He was advised only that he could not play blackjack. Appellant's Appendix ("AA") at 99a. Indeed, the only reason casino employees offered to justify the plaintiff's forcible removal from the Casino was their belief that he would count cards while playing blackjack. Plaintiff suffered various injuries allegedly because of the force employed by defendants' security guards.

Plaintiff was eventually turned over to the Atlantic City Police and an employee of the Casino purportedly filed a complaint against him for "defiant trespass" in violation of N.J.Stat.Ann. § 2C:18–3(b). However, neither the complaint nor any certified copy of it was ever introduced into the record. After being in police custody for more than 20 hours, Prinz pleaded guilty. Although he believed that he had committed no crime, Prinz testified during the trial of this case that he pleaded guilty because of the following circumstances:

A   Well, like I said, I was taken to the police station around midnight and I was ushered off into the cell. I was there for the morning. The afternoon went by. I still didn't hear anything. Finally they took us to this room, handcuffed us, took us up to this courtroom where the public defendant—

Q  Public defender.

A  Public defender approached me and he told me that my best bet, you know, is to plead guilty and they would give me a $25 fine.

Q  Did you feel you were guilty?

A  No, I didn't feel that I was guilty of anything, but as I said before, I was detained for 19, 20 hours and in a situation I had never been in and my main objective was to get my freedom again.  AA at 62a.

Although during cross-examination defendant asked plaintiff whether he had "pleaded guilty to those charges," id. at 58a, defendant failed to offer into evidence a copy of the complaint which demonstrated the charges it had filed against plaintiff. The defendant also failed to offer into evidence the transcript of testimony, judgment of conviction or any other part of the record in the prior criminal proceeding.

The word "estoppel" or any articulation of that theory cannot be found anywhere in the pleadings or in the documents which were forwarded to us from the district court.  There is no evidence whatsoever suggesting that the plaintiff or the court was informed that the defendant was relying on the doctrine of collateral estoppel.

## II.

### The Collateral Estoppel Issue

The party, the defendant in this case, seeking to collaterally estop the litigation of an issue bears the burden of satisfying two separate, though related, requirements. First, the defendant must plead estoppel affirmatively as a defense to satisfy its procedural burden.  Second, the defendant must demonstrate the propriety of its application to satisfy its substantive burden.

**1.**  Although the majority opinion refers to Rule 15(c), we believe it intended to refer to Rule 15(b) and that its reference to Rule 15(c) is a typographical error.

**2.**  Rule 15(b) provides in pertinent part:
  (b) Amendments to Conform to the Evidence.  When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all

The substantive component of collateral estoppel embodies three requirements: (a) the issue to be concluded in the present action must be identical to that involved in the prior action;  (b) the identical issue in the prior action must have been "actually litigated";  and (c) the determination made of the identical issue in the prior action must have been necessary and essential to the resulting judgment.

### A.  Procedural Requirement

Federal Rule of Civil Procedure ("Rule") 8(c) requires that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively ... estoppel ... and any other matter constituting an avoidance or affirmative defense."  In the instant case appellant failed to plead collateral estoppel as an affirmative defense in its answer to appellee's original complaint.  Nor did appellant subsequently amend its pleadings to include the affirmative defense of collateral estoppel.  Finally, appellant failed to articulate the theory of collateral estoppel in its motion for a directed verdict at the conclusion of plaintiff's case in the court below.

The majority concludes that apparently Rule 15(b) [1] allows this court to collaterally estop appellee's false imprisonment claim. Majority Opinion at 7.  Rules 8(c) and 15(b) [2] read together suggest that an affirmative defense not pleaded is waived unless the parties by their express or implied consent agree to litigate that particular affirmative defense.

The majority's conclusion demonstrates, however, that in considering Rules 8(c) and 15(b) together it either misread the evidence or read the evidence only in a manner consistent with its conclusion.  In considering Rule 15(b)'s application to the instant case the majority concludes:

  respects as if they had been raised in the pleadings.  Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.  (emphasis added).

Here the facts on which the defense of collateral estoppel rests were pleaded in the answer. They were introduced in evidence without objection. They were called to the court's attention in a motion for directed verdict, which was renewed at the end of the entire case. They were the subject of a timely request for charge. *Prinz does not suggest that he has any evidence which might have been offered to overcome the collateral estoppel effect of his guilty plea.* In this totality of circumstances Rule 15(c) [sic] rather than Rule 8(c) provides the appropriate frame of reference. (emphasis added)

Majority Opinion at 694–695.[3]

The majority misconstrues Rules 8(c) and 15(b). Mistakenly they assume that these rules allow *a party to plead facts without articulating the particular defense(s)* relied on as a substitute for the more than *twenty* affirmative defenses enumerated in Rule 8(c).

Estoppel is an affirmative defense which must be pleaded.

Rule 8(c) states:

Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, *estoppel,* failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. (emphasis added).

Rule 8(c) does allow courts to permit parties to amend incorrect pleadings. It recognizes

that a party could "mistakenly [designate] a defense as a counterclaim. . . ."

The defendant's failure to plead the affirmative defense of collateral estoppel in this case is a paradigm example of a pleading that is glaringly defective. Indeed, not once in defendant's answer does it use the word "estoppel" or the words "collateral estoppel." Instead, defendant's counsel filed an answer which was clouded with error, imprecision and ambiguity. The only paragraph in defendant's answer which defendant claims or could possibly be construed to have alerted appellee that defendant was relying on collateral estoppel as an affirmative defense demonstrates this error, imprecision and ambiguity.

"DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

.        .        .        .        .

12., 13. Denied. The allegations of false imprisonment are denied. To the contrary, *defendant* [sic] was detained pending arrival of the Atlantic City Police Department and *plaintiff* was charged and convicted of defiant trespass. Further to the contrary, *plaintiff's* confinement was not illegal."

AA at 8a (emphasis added). Thus, defendant's counsel incorrectly alleged that the defendant, his client, was "detained," but that plaintiff, his client's adversary, was "charged and convicted." Defendant's counsel's imprecision is evidenced by his pleading these facts in the section of the answer concerning denials rather than putting these facts with the six defenses alleged by defendant and then alleging estoppel as an additional defense.[4]

On its face, the answer reads as if this were a case where the false imprisonment

---

**3.** This statement of the majority demonstrates its erroneous assumption that plaintiff's "guilty plea" automatically and necessarily estops plaintiff's false imprisonment claim. Before any burden falls on the plaintiff to overcome the effect of collateral estoppel, the defendant must plead, litigate and prove the propriety of the doctrine's application to the instant case. The majority errs in assuming collateral estoppel barred plaintiff's false imprisonment claim.

**4.** The defendant's answer lists and sets apart six defenses on which it apparently relies. In none of these defenses does defendant mention or refer to the collateral estoppel issue or even to the false imprisonment claim. Indeed, the word estoppel is not to be found anywhere in the answer. The word estoppel cannot be found anywhere in the evidence relied on below. *See* 1–4, *supra.*

issue is being challenged without an estoppel defense. Defendant filed the type of answer which one would expect in a case where collateral estoppel was not relied on as an affirmative defense.

It approaches an absurdity for us to expect a trial judge to conclude from defendant's mere denial that it falsely imprisoned plaintiff that defendant was relying on a charge of defiant trespass under New Jersey law as the affirmative defense of collateral estoppel to plaintiff's false imprisonment claim. No New Jersey case states or even suggests that a guilty plea to or conviction of the crime of defiant trespass estops a false imprisonment claim. Moreover, given the multitude of other matters and considerations confronting trial judges, the majority imposes on them the unnecessary and unrealistic burden of flushing out and articulating affirmative defenses for counsel. The burden of determining and articulating which, if any, affirmative defense is being relied on, however, rests on the party who seeks to employ it as a bar to litigation. Therefore, I must conclude that a party must articulate the theory of collateral estoppel in order to rely on it as an affirmative defense. In this case, the word "estoppel" was never pleaded in the answer; neither was it mentioned during the course of litigation nor raised in post trial motions, although it was used at least twelve times on appeal.

More importantly, the majority concedes that if an affirmative defense is not pleaded it is considered waived. Majority Opinion at 694. The majority goes on to suggest that if an affirmative defense is waived "the party who should have pleaded the affirmative defense may not introduce evidence *in support thereof,* unless the adverse party makes no objection in which case the issues are enlarged ...." Majority opinion at 694 quoting 2A Moore's, Federal Practice ¶ 8.27[3], pp. 8–251, 8–253 (2d ed. 1981) (emphasis added).

In the prior litigation the issue presumably was whether the plaintiff was a defiant trespasser. There is, however, no evidence of the complaint, transcript, judgment of conviction or exhibits used in that criminal proceeding. In this litigation plaintiff sought to prove that defendant had falsely imprisoned him. The plaintiff can prove false imprisonment by demonstrating that he was detained by force or threat of force against his will. The appellant can defend against plaintiff's claim by litigating the false imprisonment issue or by pleading collateral estoppel as an affirmative defense.

The majority however fails to differentiate the issues involved in the instant litigation and the evidence essential to this litigation from the issue involved in the prior criminal litigation and the evidence essential to it. Consequently, the majority misapplies Rule 15(b).

Rules 8(c) and 15(b) simply recognize that a defendant can approach a complaint in at least two ways. Under Rule 8(c) a defendant can deny allegations raised in the complaint and litigate or relitigate disputed issues. A defendant can also plead the affirmative defense of collateral estoppel to bar relitigation of an identical issue fully litigated, decided and necessary to the prior action. Rule 8(c) has been interpreted to consider affirmative defenses not pleaded and/or not litigated to be waived. *Id.* However, under Rule 15(b) the opportunity to raise affirmative defenses is considered extinguished until the parties expressly or impliedly consent to and actually litigate the particular affirmative defense. Here, we are concerned with the affirmative defense of collateral estoppel. Thus, if defendant failed to plead collateral estoppel as an affirmative defense it is waived unless the parties actually litigated that issue by their express or implied consent.

The majority has wrongly interpreted Rule 15(b) to mean that the mere evidence that appellee testified that he "pleaded guilty to the charges" is an implied consent on his part to litigate the issue of collateral estoppel. The majority recognizes that under Rule 15(b) the adverse party can object to the introduction of evidence in support of an affirmative defense that has been waived. However, the majority apparently concludes that appellee impliedly consented

to litigate the issue of collateral estoppel because he failed to object to "the facts on which the defense of collateral estoppel rests," Majority Opinion at 694. But, there is simply no evidence from which one can find support for the majority's conclusion. The evidence indicates *only* that appellee agreed to litigate *only* the issue raised during the course of litigation; that is, whether the defendant had falsely imprisoned him. The mere existence of facts which *arguably* could have served as the basis for alleging another claim is insufficient proof that appellee had impliedly consented to litigate this other claim.

Apparently the majority also assumes that trial judges should be sufficiently omniscient to perceive defenses which experienced counsel failed to plead, articulate or litigate. I believe that just as there is truth in the Brahmin expression that "the eye cannot see what the mind cannot comprehend," trial judges should not be expected to see the issue(s) which counsel do not plead, articulate or litigate.

### B. *Substantive Requirement*

The second reason for my dissent centers on the majority's assumption that defendant satisfied his substantive burden regarding the doctrine of collateral estoppel without requiring proof of its applicability to this case. The party who seeks to estop an adverse party from proving his instant claim bears the substantive burden of establishing the applicability of the doctrine of collateral estoppel. *Chisholm v. Defense Logistics Agency,* 656 F.2d 42, 50 (3d Cir. 1981); *see Scooper Dooper, Inc. v. Kraftco Corp.,* 494 F.2d 840 (3d Cir.1974).

As stated earlier, the party seeking to rely on the doctrine of collateral estoppel must prove three essential elements: (1) the issue to be concluded in the second action must be identical to that involved in the prior action; (2) the identical issue in the prior action must have been "actually litigated"; and (3) the determination made of the identical issue in the prior action must have been necessary and essential to the resulting judgment. *Scooper Dooper, Inc.*

*v. Kraftco Corp.,* 494 F.2d at 844 (identical issue requirement); *Brightheart v. McKay,* 420 F.2d 242 (D.C.Cir.1969) (actual litigation of identical issue requirement); *Roth v. McAllister Bros., Inc.,* 316 F.2d 143 (2d Cir. 1963) (litigated issue must be necessary and essential to resulting judgment requirement). The court must evaluate the parties' evidence of the prior litigation and then determine whether the question before it has been " 'distinctly put in issue and directly determined' in the criminal prosecution." *Emich Motor Corp. v. General Motors Corp.,* 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951), quoting *Frank v. Mangum,* 237 U.S. 309, 334, 35 S.Ct. 582, 589, 59 L.Ed. 969 (1915).

In the instant case the defendant now maintains that mere evidence that the plaintiff's testimony suggests that he pleaded guilty to the charge of defiant trespass in a prior criminal action estops plaintiff from proving his false imprisonment claim in the instant civil action.

The precedent of this circuit is clear regarding how the doctrine of collateral estoppel is applied in cases where the prior litigation involved criminal charges while the present litigation involves civil claims. A party can conclusively demonstrate the propriety of the doctrine of collateral estoppel's application by mere evidence of a prior conviction "*only* if the issue on which the [propounding party] sought to estop [plaintiff] was necessarily decided by [that prior conviction]," *Chisholm v. Defense Logistics Agency,* 656 F.2d at 49; *Kauffman v. Moss,* 420 F.2d 1270, 1274 (3d Cir.1970). The question thus becomes whether plaintiff's guilty plea to the charge of defiant trespass conclusively establishes probable cause for the detention of plaintiff, a defense to false imprisonment, and therefore estops plaintiff's false imprisonment claim.

Unless it appears on the face of the complaint to which plaintiff pleaded guilty that the present action is barred by issues decided in a prior adjudication, a court considering a party's collateral estoppel defense must examine the complete record in order to determine what issues have been litigat-

ed and decided. *Ash v. Swenson,* 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. at 569, 71 S.Ct. at 534 (1951); *Chisholm v. Defense Logistics Agency,* 656 F.2d at 48–51; *Basista v. Weir,* 340 F.2d 74, 81–82 (3d Cir.1965).

In the instant case, however, this determination could not be made because we do not have the complaint before us. The majority therefore erred in concluding that the plaintiff's guilty plea to defiant trespass estopped his false imprisonment claim. Instead it examined only the statute under which plaintiff pleaded guilty. N.J.Stat. Ann. § 2C:18–3(b) provides in pertinent part:

A person commits a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass [has been] given by: (1) actual communication to the actor; ...

This circuit is, as stated earlier, quite clear in its view that an adequate and essential record of the prior criminal proceeding is essential to demonstrating the applicability of the doctrine of collateral estoppel. A party "may meet [this] burden of establishing which issues were litigated by introduction of the record of the criminal proceeding, including the transcript ...." *Chisholm v. Defense Logistics Agency,* 656 F.2d at 50; *Basista v. Weir,* 340 F.2d at 81–82.

In *Basista v. Weir, supra,* we considered plaintiff's claim that he had been unlawfully arrested by certain police officers in violation of his civil rights. Moreover, in *Basista* this court had before it the indictment and judgment of conviction for the crime of assault and battery against the arresting officers. Nonetheless this court said that without a complete record, including the transcript of the prior criminal proceeding, it could not decide conclusively whether the underlying arrest had been lawful. 340

F.2d at 81–82. The plaintiff in that case had been convicted in a prior criminal proceeding of assault and battery against the arresting officers whom he was suing in a civil action. The indictment and judgment of conviction were part of the record before our court. Nonetheless, we held that plaintiff's unlawful arrest claim was not estopped because the transcript of criminal proceedings was not admitted in evidence. *Id.* at 81. The absence of a certified copy of the transcript left unclear whether the prior criminal proceeding had decided the lawfulness of the challenged arrest. *Id.* at 81–82.

In the instant case the majority did not discuss *Basista.* The panel apparently failed to recognize, or chose to ignore, it as binding precedent even though it is squarely on point and its approach has been reaffirmed often. *See, Kauffman, supra,* and *Chisholm, supra.* Instead, the majority employed conclusory reasoning to explain its application of collateral estoppel. It merely assumed that because plaintiff had pleaded guilty to the charge of defiant trespass his arrest was automatically lawful and therefore he was collaterally estopped from maintaining an action, false imprisonment, for unlawful detention where the lawfulness of the underlying arrest is a defense. Majority Opinion at 694–695.

In the instant case the defendant bore the burden of proving the propriety of collateral estoppel to bar plaintiff's false imprisonment claim by demonstrating that there was probable cause for plaintiff's detention by the casino. "[P]robable cause for [plaintiff's] detention is a crucial element of the defense," to a charge of false imprisonment in New Jersey. *Jorgensen v. Pennsylvania Railroad Co.,* 38 N.J.Super. 317, 349, 118 A.2d 854, 872 (1955).[5] Indeed, probable cause is relied on by the defendant and adopted by the majority as the affirma-

---

**5.** The majority apparently relies on *Jorgensen v. Pennsylvania Railroad Co.,* in support of the proposition that in New Jersey a guilty plea to the charge of defiant trespass estops plaintiff from proving a false imprisonment claim. Neither *Jorgensen,* nor any other New Jersey case

stands for this proposition. Indeed, *Jorgensen* states only that "[t]he truth or falsity of the charge is, of course, germane to the establishment of probable cause." 38 N.J.Super. at 349, 118 A.2d at 782.

tive defense estopping plaintiff's false imprisonment claim. Majority Opinion at 6. The majority states:

> But more significantly for present purposes, Greate Bay argues that ... Prinz' guilty plea to the charge of defiant trespass estopped him from contending that he could lawfully remain in the casino. If he could not lawfully remain there was probable cause for his detention as a defiant trespasser, which in New Jersey is a defense to a charge of false imprisonment. *E.g., Jorgensen v. Pennsylvania Railroad Co.,* 38 N.J.Super. 317, 349, 118 A.2d 854, 872 (1955). *Id.* at 6–7.

The majority's analysis is improperly focused toward whether the plaintiff could lawfully remain in the casino. The proper question is whether there was probable cause to detain plaintiff. The majority suggests that defendant meets its burden of proving probable cause for plaintiff's detention simply with evidence of plaintiff's guilty plea to the "charges." The majority and the record, however, fail to establish that the issue of the probable cause for plaintiff's detention on which the casino sought to estop the [plaintiff] was necessarily decided by plaintiff's guilty plea. Therefore, it was improper for the court to rely on the guilty plea as conclusive proof of the propriety of collateral estoppel to bar the plaintiff's false imprisonment claim. According to *Kauffman v. Moss,* 420 F.2d at 1274, the court must in this situation examine the complete record in order to determine what issues have been litigated and decided. *Ashe v. Swenson,* 397 U.S. at 444, 90 S.Ct. at 1194; *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. at 569, 71 S.Ct. at 534; *Chisholm v. Defense Logistics Agency,* 656 F.2d at 48–51; *Basista v. Weir,* 340 F.2d at 81–82.

### III.

#### Casino's Lack of Authority to Exclude Alleged Cardcounters

Examination of the actual record in the criminal prosecution of Prinz is of particular importance in this case. The facts of record here strongly suggest that the acts which Prinz committed did not constitute the crime—of defiant trespass—to which he had pleaded guilty.

In the instant case we have far less of a record than that which was presented in *Basista;* for there, the court had before it the Court of Quarter Sessions' judgment. Here, we have no complaint, transcript or judgment of conviction. Moreover, the usual problems which an ambiguous and inadequate record create are compounded in many additional ways in this case. Most importantly, unlike *Basista,* we are not dealing with a traditional common law crime such as assault and battery, a crime in existence since the memory of man runneth not to the contrary. Instead we are confronted with a potentially ambiguous and vague statutory offense which the New Jersey legislature has designated as "defiant trespasser." A defiant trespasser is one who "knowing that he is not licensed or privileged to do, ... enters or remains in any place to which notice against trespass is given.·...." N.J.Stat.Ann. § 2C:18–3(b).

Thus, the core of any prosecution of Prinz must be predicated on whether Prinz was "privileged" to enter or remain in the casino. So long as he was a peaceful adult, Prinz had, at least *prima facially,* the right to join other gamblers at the casino blackjack table. Casinos have no right to bar persons from gambling solely because they are lucky, and similarly the Supreme Court of New Jersey has stated in unequivocal language that casinos cannot bar persons solely because they are cardcounters. *Uston v. Resorts International Hotel, Inc.,* 89 N.J. 163, 445 A.2d 370 (1982).

The basic inquiry becomes what criminal act did Mr. Prinz commit to become a defiant trespasser? Through the testimony of the security guard who initiated the arrest, all that Mr. Prinz was doing was "playing cards" not "bothering anybody" and "not causing a commotion." The casino security individuals believed that he was "counting cards" at a blackjack table, and they asked him to leave. Apparently not content with the present odds in favor of the Casino, it

theorized that it was improper for their customers to count cards, and that when a person does count cards and refuses to leave, such person is a "defiant trespasser" and subject to detention and arrest.

The Casino was wrong as to its theory of law. The New Jersey Supreme Court held subsequent to the arrest that the casinos had no legal right to exclude cardcounters and that "the [casino] Commission alone has authority to exclude persons based upon their methods of playing licensed casino games . . . ." *Uston v. Resorts International Hotel, Inc.,* 89 N.J. at 174, 445 A.2d 370. Because defendants had no right to bar or evict plaintiff from its premises, it follows that plaintiff at no time was trespassing and therefore should not have been arrested for defiant trespass.

In short, plaintiff pleaded guilty for an act which as a matter of law was not a crime under the New Jersey law. Thus, even if we had the explicit record of the state criminal proceedings which our court in *Basista* said was required before one can invoke the collateral estoppel doctrine, it is questionable whether the collateral estoppel doctrine would apply here simply because a defendant pleaded guilty to an act which did *not* constitute a crime under the applicable criminal code.

Because the arrest of a citizen is a serious and sometimes terrifying event in his life, there are risks which are assumed in swearing out a complaint against a person who, as it turns out, did not commit a crime. That person who was arrested may decide to bring a civil action in an attempt to remedy the harm to him as a result of having been detained and arrested. Here the casino gambled by relying on an erroneous theory of criminal law as to what constitutes the offense of defiant trespass in order to detain and charge Prinz. It now seeks protection based on an inadequate record and the bootstrapping of collateral estoppel to Prinz' guilty plea to bar Prinz' false imprisonment claim. In my view, the casino should not win on appeal with the present record before us.

Prinz suffered the indignity of being in police custody for 20 hours for an act which was *not* a crime. The majority compounds the injustice of an arrest for an act which was not a crime by allowing the casino to rely on a collateral estoppel defense which was neither pleaded nor proven as required by the rules and precedents. Unfortunately, once again the odds come out in favor of the casino and against the casino customers. By considering an issue not articulated in the pleadings, trial, or post trial motions we are expecting of trial judges an omniscience which mortals do not have. For the reasons explained above, I believe that the majority's reversal of the district court on this issue is in error.

Before SEITZ, Chief Judge, and ADAMS, GIBBONS, HUNTER, WEIS, HIGGINBOTHAM, SLOVITER, and BECKER, Circuit Judges.

## SUR PETITION FOR REHEARING

The petition for rehearing filed by appellee in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

A. LEON HIGGINBOTHAM, Jr., Circuit Judge, dissents from the denial of petition for rehearing for the reasons set forth in his dissent from the panel opinion.