NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2826
_____

JEVONTE F. PRESSLEY,
Appellant

v.

CO1 MATT MILLER, CO1 M. HERSHENBERG
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 3:19-cv-00148)
District Judge:  Honorable Stephanie L. Haines
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
August 15, 2022
Before:  GREENAWAY, JR., PORTER and NYGAARD, Circuit Judges

(Opinion filed: December 5, 2022)
_____

OPINION*
_____

PER CURIAM

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Jevonte Pressley appeals pro se from an order of the District Court granting summary judgment to Defendants Matt Miller and Matt Hershenberg. For the reasons discussed below, we will affirm in part and vacate in part.

I.

Jevonte Pressley, an inmate currently housed at the Pennsylvania State Correctional Institute Forest, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 in the United States Court for the Western District of Pennsylvania, in September 2019. In November 2019, Pressley amended his complaint, asserting two claims based on violations of the Eighth Amendment. Because we write primarily for the parties, who are familiar with the facts, we will discuss the details of the claims only as they are relevant to the analysis. To briefly summarize, Pressley alleged that, on October 28, 2018, he was escorted to a Restricted Housing Unit ("RHU") cell by both Defendants. When he approached the cell, he immediately observed that it was contaminated by human feces (smeared on the walls, bed, air vent, and cell door, and covering the "feeding slot"). He refused to enter the cell due to the contamination but was forced to enter by the Defendants. Pressley claims that he was housed in the contaminated cell for three days and refused his meals for much of that time because of the conditions of the cell. On the same day, Pressley was sprayed with oleoresin capsicum spray ("OC spray" or pepper spray) and was thereafter prevented from showering and decontaminating his body from the OC spray. Based on these facts, Pressley claimed that (1) Defendants violated the Eighth Amendment by subjecting him to inhumane conditions in his RHU

2

cell; and (2) Defendants violated the Eighth Amendment by prolonging his exposure to OC spray when he was refused a shower for eight days.

Defendants moved for summary judgment on two grounds:  one, that Pressley failed to exhaust administrative remedies and therefore his claims were procedurally defaulted, and two, that his claims failed on the merits.  Pressley opposed summary judgment on both grounds.  The Magistrate Judge issued a Report and Recommendation ("R&R"), recommending that the Defendants' motion be granted.  The District Court overruled Pressley's objections to the R&R, adopted the R&R as amended in the Court's memorandum, granted Defendants' motion for summary judgment, and entered judgment in Defendants' favor.  Specifically, the District Court concluded that, while Defendants had failed to establish the affirmative defense of failure to exhaust administrative remedies, they were entitled to summary judgment on the merits of Pressley's claims. Pressley appeals.

## II.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review over a grant of summary judgment, applying the same standard that the District Court applies.  Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 141 (3d Cir. 2017).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## III.

3

We will begin by addressing the District Court's conclusion regarding exhaustion of remedies and procedural default.[1]  Defendants argue, as they did in the District Court, that they were entitled to summary judgment on all claims because Pressley failed to exhaust his administrative remedies, since he failed to name Defendants in the DOC's grievance process.  We agree with the District Court, however, that Defendants failed to establish this affirmative defense because Pressley's procedural default was excused.

This Court has held that an inmate's procedural default may be excused if the prison identifies the persons involved and "they were fairly within the compass of the prisoner's grievance."  Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004).  Moreover, "[t]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued."  Williams v. Beard, 482 F.3d 637, 640 (3d Cir. 2007) (quoting Jones v. Bock, 549 U.S. 199, 219 (2007)).  We agree with the District Court that Pressley's grievance did just that.  As the District Court concluded, DOC employees indicated that Defendants were part of the grievance investigation and thus "fairly within the compass of the prisoner's grievances."  Spruill, 372 F.3d at 234–35.

## IV.

To succeed on a claim alleging that conditions of confinement violated the Eighth Amendment, a plaintiff must demonstrate that:  (1) the deprivation was sufficiently

---

[1] Although Defendants did not file a cross-appeal, their exhaustion argument is properly before us because "a party, without taking a cross-appeal, may urge in support of an order from which an appeal has been taken any matter appearing in the record." Smith v. Johnson and Johnson, 593 F.3d 280, 283 n.2 (3d Cir. 2010).

4

serious, and (2) the prison official must have a sufficiently culpable state of mind, referred to as "deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994). "The first element is satisfied when an inmate is deprived of 'the minimal civilized measure of life's necessities.'" Thomas v. Tice, 948 F.3d 133, 138 (3d Cir. 2020) (quoting Wilson v. Seiter, 501 U.S. 294, 299 (1991)). This Court has adopted a subjective standard applicable to the second element, requiring a showing that officials "actually knew of and disregarded constitutional violations." Id. (citing Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001)).

In granting summary judgment on Pressley's conditions of confinement claim, the Court concluded that: (1) Pressley failed to present any factual evidence in support of his allegations that the RHU cell was contaminated by feces, and (2) Pressley had failed to meet his burden to demonstrate that Defendants were personally involved in the alleged deprivations. However, upon review of the record, we conclude that genuine issues of material fact preclude summary judgment on this claim.

First, we disagree with the District court's conclusion that Pressley failed to present any evidence in support of his allegation that the RHU cell was contaminated. To the contrary, Pressley relied on the allegations contained in his amended complaint, which was signed under penalty of perjury,[2] that "the cell walls had feces (human waste)

---

[2] See Parkell v. Danberg, 833 F.3d 313, 320 n.2 (3d Cir. 2016) ("Much of Parkell's version of events is supported solely by his own statements in verified complaints and other court filings. Because those documents were signed under penalty of perjury in accordance with 28 U.S.C. § 1746, we consider them as equivalent to statements in an affidavit.") (citing United States v. 225 Cartons, More or Less of an Article or Drug, 871 F.2d 409, 414 n.4 (3d Cir. 1989)); see also United States ex rel. Doe

5

smeared over the walls," as well as "under the [b]ottom of the [t]op [b]ed (Bunk), over the cell's air vent, and . . . on the cell door and its feeding slot." Dkt No. 4, at 3–4. Pressley also relied on multiple affidavits from fellow prisoners, whose accounts are consistent with Pressley's statements.[3] See Brooks v. Kyler, 204 F.3d 102, 108 n.7 (3d Cir. 2000) (observing that "an inmate who is proceeding pro se[] is in a decidedly difficult position from which to generate record evidence on his behalf," and that affidavits "are about the best that can be expected" at summary judgment). As such, Pressley has done more than present unsubstantiated allegations. See Bell v. United Princeton Props., 884 F.2d 713, 720 (3d Cir. 1989). Instead, he has created a genuine issue of material fact as to whether his cell was contaminated to support his claim that he was "deprived . . . of 'the minimal civilized measure of life's necessities.'" Thomas, 948 F.3d at 138; McBride v. Deer, 240 F.3d 1287, 1292 (10th Cir. 2001) (stating that, because "human waste [is] considered particularly offensive . . . courts have been especially cautious about condoning conditions that include an inmate's proximity to [it]").[4]

_____

v. Heart Sol., PC, 923 F.3d 308, 315 (3d Cir. 2019).

[3] Only four out of the seven unsworn affidavits were signed under penalty of perjury. See Doe, 923 F.3d at 315 ("[W]hile an unsworn statement may be considered on summary judgment, an unsworn statement that has not been made under penalty of perjury cannot."). The District Court rejected all of the affidavits, however, concluding that they lacked personal knowledge. We conclude that several of the affidavits sufficiently demonstrate personal knowledge of the events, see, e.g., Dkt No. 42-2, Ex. B (stating that declarant witnessed placement of Pressley into a cell filled with feces); Dkt No. 42-3, Ex. C (same), and thus consider those affidavits in the analysis.

[4] Several courts have concluded that similar circumstances deprive inmates of the "minimum civilized measure of life's necessities and thus violate the Eighth Amendment." See, e.g., Vinning–El v. Long, 482 F.3d 923, 925 (7th Cir. 2007) (reversing grant of summary judgment to defendants on Eighth Amendment claim, where

6

Second, we also disagree with the District Court's conclusion that Pressley failed to show personal involvement by the Defendants, providing only unsubstantiated allegations. Again, we find that Pressley's statements in his verified complaint as sufficient to put this issue in dispute. Notably, deliberate indifference can be established by inference from circumstantial evidence, see Farmer, 511 U.S. at 842, including evidence that the risk was "so obvious that the official must have known of the risk," Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001). Given the conditions that Pressley has described, a reasonable jury could infer that prison officials escorting Pressley to the cell necessarily would have known about the condition of the RHU cell. See Vinning-El, 482 F.3d at 924–25. Therefore, we conclude that Pressley presented sufficient evidence to raise a genuine issue of material fact as to whether Defendants were deliberately indifferent, and we will vacate the District Court's judgment on this claim.

V.

We will affirm the District Court's judgment as to Pressley's second claim. Essentially, Pressley alleged that Defendants violated the Eighth Amendment by denying

---

cell floor was covered with water, there was a broken toilet, feces and blood smeared on the wall, and no mattress to sleep on); Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992) (reversing grant of summary judgment to defendants were prisoner was held in cell that allegedly was filthy and smelled of human waste, among other issues); see also DeSpain v. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001) (concluding that exposure to human waste, even for 36 hours, would constitute sufficiently serious deprivation to violate Eighth Amendment).

him the opportunity to shower for 8 days after he was sprayed with OC spray and thus denied him the opportunity to decontaminate his body.

Prison officials "violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs." Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (quotation marks and citation omitted). However, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishment Clause." Farmer, 511 U.S. at 845.

While the failure to decontaminate prisoners following exposure to OC spray, or otherwise provide medical treatment after the exposure, may support a claim for a violation of the Eighth Amendment, see, e.g., Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002), we conclude that the District Court correctly granted Defendants' motion for summary judgment in this instance. This Court has previously concluded that non-medical prison officials are generally justified in relying on the expertise and care of prison medical providers. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."). In moving for summary judgment, Defendants relied on a medical incident/injury report from October 28, 2018 (the day of the OC spray exposure), indicating that, following the incident, Pressley was seen by medical personnel and his eyes were decontaminated. See Dkt No. 42-9. While Pressley argues that his whole body should have been decontaminated because his body was exposed to the OC spray,

8

Defendants acted reasonably by relying on the decision of the medical personnel.  Spruill, 372 F.3d 218.  Therefore, we will affirm the District Court's judgment on this claim.

## VI.

Accordingly, we will vacate the District Court's September 17, 2021 judgment to the extent that it granted summary judgment in favor of the Defendants on Pressley's Eighth Amendment claim relating to the conditions of his confinement in the RHU cell. We will affirm the District Court's judgment in all other respects.  Additionally, Pressley's motion for a default judgment is denied.  This matter is remanded for further proceedings consistent with this opinion.